The STATE of Ohio, Appellee,

v.

ELLIOTT, Appellant.■

[Cite as *State v. Elliott* (1993), 91 Ohio App.3d 763.]

Court of Appeals of Ohio,
Mercer County.

No. 10–92–17.

Decided Nov. 5, 1993.

*Terry L. Hord,* Mercer County Prosecuting Attorney, for appellee.

*James Kura,* Ohio Public Defender, and *Richard E. Graham,* Assistant Public Defender, for appellant.

Thomas F. Bryant, Judge.

This is an appeal from a judgment entered by the Common Pleas Court of Mercer County upon a jury's verdict finding defendant-appellant, Guy Elliott, guilty of murder in violation of R.C. 2903.02.

Appellant, along with Christopher A. Van Wormer and Brian Helms, was indicted by the Hardin County Grand Jury in July 1992 on charges of aggravated murder in violation of R.C. 2903.01(B) and aggravated robbery in violation of R.C. 2911.01(A)(2). The jury found appellant guilty of the lesser included offense of murder and not guilty of the lesser included offense of petty theft.[1] Appellant was sentenced to fifteen years to life in prison.

The trial was held in Mercer County following the trial court's granting of motions for change of venue filed by both the appellant and the state. The ground for the motions was media publicity before and during the trial of Van Wormer, which was held in the Common Pleas Court of Hardin County. Van

---

1. The remaining verdict forms, for the offenses of aggravated murder, involuntary manslaughter, felonious assault, aggravated robbery and robbery, were left blank by the jury.

Wormer was found guilty of involuntary manslaughter and aggravated robbery approximately two months before appellant's trial began.[2]

 For his first assignment of error, appellant asserts:

"A conviction that is based upon insufficient evidence and which is against the manifest weight of the evidence violates due process of law under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution."

This assignment of error does not comply with Loc.R. 11(A), since it is set forth as a proposition of law rather than an assignment of error. See, also, *State v. Maxson* (1990), 66 Ohio App.3d 32, 36, 583 N.E.2d 402, 404. In the interest of justice, we will address it as an assignment of error which asserts that appellant's conviction is based upon insufficient evidence or is against the manifest weight of the evidence.

Appellant mentions both the United States and Ohio Constitutions in this assignment of error, but makes no argument in support of the alleged constitutional implications. We will refrain from engaging in a gratuitous discussion of any constitutional implications. See App.R. 16(A)(7).

 When determining whether a conviction is against the manifest weight of the evidence, "[i]t is not the function of an appellate court to substitute its judgment for that of the factfinder." *State v. Jenks* (1991), 61 Ohio St.3d 259, 279, 574 N.E.2d 492, 507. In *Jenks,* the court held:

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.,* paragraph two of the syllabus. See, also, *State v. Eley* (1978), 56 Ohio St.2d 169, 172, 10 O.O.3d 340, 341, 383 N.E.2d 132, 134.

Appellant was convicted of murder in violation of R.C. 2903.01, which provides, in pertinent part, that "No person shall purposely cause the death of another." "Purposely" is defined in R.C. 2901.22(A):

"A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."

---

2. Helms has not been found and, therefore, has not yet stood trial.

Appellant states that the evidence against him is entirely circumstantial. The Supreme Court of Ohio, however, has noted that "[c]ircumstantial evidence and direct evidence inherently possess the same probative value." *State v. Jenks,* 61 Ohio St.3d at 272, 574 N.E.2d at 502. The factfinder, in this case the jury, must weigh all evidence against the standard of proof in criminal cases, beyond a reasonable doubt. It is no longer necessary that the state prove that the evidence must be irreconcilable with any reasonable theory of innocence in order to support a conviction based on circumstantial evidence. *Id.,* 61 Ohio St.3d at 273, 574 N.E.2d at 503. An appellate court will not reverse a jury's verdict unless it finds that "reasonable minds could not reach the conclusion reached by the trier of facts." *Id.*

The record reflects that appellant was in the company of Van Wormer and Helms on the evening of June 20, 1992, and that the three left a bar in Findlay between 2:20 and 2:30 a.m. on June 21, 1992. The victim, Timothy Rayle, left a different bar in Findlay at approximately 2:20 a.m. on June 21, 1992.

Timothy Rayle's body was recovered from the Dunkirk Quarry on June 23, 1992. The cause of death was determined by autopsy to be multiple blunt trauma. There was severe bruising about the head, chest, back and rib area and many ribs were broken. The victim's car, clothing and wallet were found at the quarry. Appellant's wallet was found next to the victim's car. There were scuff marks on the ground around the car which were indicative of a physical altercation.

George Reed, a fellow inmate of appellant at the Hancock County Jail, testified that appellant told him that he was riding in the front passenger seat of a car the victim was driving with Van Wormer and Helms in the back seat when the victim stated that he did not turn around to talk to some girls at appellant's request because "I [*sic*] got what I want" and proceeded to grab appellant between the legs. Appellant told Reed that he began hitting the victim, which caused the car to run off the road. Appellant then got out of the car, pulled the victim out and hit him ten to twelve times in the face and chest area. Appellant also told Reed that he thought he had broken some of the victim's ribs because he was gasping for air. Appellant told Reed that he then walked away and turned around to see the victim, Van Wormer and Helms driving away. Appellant said he next saw Van Wormer and Helms the following day at appellant's house.

Appellant's allegations that Reed's testimony is unreliable because "he had reason to advance" such testimony is untenable. Reed testified that he received no consideration for his testimony in this case in exchange for his guilty plea to a charge of burglary. There is no evidence in the record to indicate otherwise.

A woman who lives three miles from Dunkirk on a road which goes from Dunkirk to Arlington testified that she was cleaning her car on June 21, 1992

when she looked up briefly and saw a man walking north on the road toward Arlington between 6:10 and 6:45 a.m. A woman who lives .8 miles farther north on the same road testified that she saw three men walking toward Arlington at approximately 6:30 a.m. on June 21, 1992. It is 4.6 miles from this witness' house to Arlington.

Appellant, Van Wormer and Helms entered Clifton's restaurant in Arlington at approximately 8:00 a.m. on June 21, 1992 and ate breakfast. Van Wormer called his cousin from the restaurant and asked him to pick up the trio, claiming their car had broken down. The cousin arrived at the restaurant, the three paid for their breakfast and then rode to Findlay with the cousin. A witness who saw appellant, Van Wormer and Helms later in the day testified that appellant appeared to be "a little uneasy" and both he and Van Wormer had mud on their pants.

On June 22, 1992, Van Wormer picked up his paycheck. At that time, he was with two other people.

The next person to see the appellant and the two co-defendants was appellant's brother, Sergeant Thomas Elliott, who was stationed in the Army at Fort Benning, Georgia. The three showed up at Sergeant Elliott's work site on June 23, 1992 and spent the night in Sergeant Elliott's home.

Appellant's mother telephoned on June 24, 1992 and stated that the police wanted to question appellant about Timothy Rayle. Appellant told his brother that he had beaten Rayle, but did not kill him. He also told his brother that he could not remember where the beating took place, but it was near a wooded area. Appellant said that he had lost his wallet and had possibly left it at a rest area between Ohio and Georgia.

Van Wormer and Helms left Fort Benning on June 24, 1992, but appellant stayed at his brother's house that night. On June 25, 1992, appellant left for Ohio with his sister-in-law and niece. Appellant was subsequently indicted by the grand jury and brought to trial.

A review of the evidence in a light most favorable to the prosecution convinces this court that the evidence, if believed by the jury, is sufficient to convince the average mind of appellant's guilt beyond a reasonable doubt. *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. Accordingly, appellant's first assignment of error is overruled.

■ For his second assignment of error, appellant asserts:

"The trial court committed prejudicial error in admitting evidence of prior bad acts under Evid.R. 404(B) and R.C. § 2945.59, thereby violating appellant's right

of due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution."

Over appellant's objection, the trial court admitted the testimony of James Ziessler, who testified that, in February 1990, he was beaten by appellant and Helms. Ziessler testified that he was walking with appellant, Helms and another individual when Helms hit him in the mouth. He ran, but appellant and Helms chased him to a fenced area where Helms continued to hit him and appellant kicked him in the head, stomach and chest. Ziessler pretended to be unconscious and appellant and Helms then quit beating him and started to leave. When Ziessler thought they were gone, he got up only to discover that appellant and Helms were still within sight. Appellant turned around and threatened to kill Ziessler if he reported the incident to the police. Although Ziessler did file a police report, he refused to identify the perpetrators because his life had been threatened. A voir dire examination of Ziessler was held and the trial court found his testimony admissible to show intent and identity.

■ Generally, evidence which tends to show that the accused has committed other crimes or acts independent of the crime for which he is on trial is not admissible to show that the defendant acted in conformity with his bad character. *State v. Mann* (1985), 19 Ohio St.3d 34, 36, 19 OBR 28, 30, 482 N.E.2d 592, 595; *State v. Curry* (1975), 43 Ohio St.2d 66, 68–69, 72 O.O.2d 37, 38, 330 N.E.2d 720, 723; *State v. Burson* (1974), 38 Ohio St.2d 157, 67 O.O.2d 174, 311 N.E.2d 526; *State v. Hector* (1969), 19 Ohio St.2d 167, 48 O.O.2d 199, 249 N.E.2d 912. Exceptions to this general rule are set forth in Evid.R. 404(B):

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Evidence of other acts may also be admissible pursuant to R.C. 2945.59:

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

■ When other acts evidence is used to establish the defendant's identity as the perpetrator of the crime in question, the prosecution must demonstrate

that the defendant utilized an identifiable scheme, plan or system in the commission of the crimes. When using other acts evidence to show the defendant's intent, the offense for which the defendant is being tried and the other act must have occurred reasonably near to each other and a similar scheme, plan or system must have been utilized to commit the offense at issue and the other offenses. *State v. Curry* (1975), 43 Ohio St.2d at 73, 72 O.O.2d at 41, 330 N.E.2d at 726. See, also, *State v. Coleman* (1988), 37 Ohio St.3d 286, 291–292, 525 N.E.2d 792, 798, certiorari denied (1988), 488 U.S. 900, 109 S.Ct. 250, 102 L.Ed.2d 238.

■ If there is no reasonable possibility that improperly admitted testimony concerning other acts contributed to the defendant's conviction, then the admission constitutes harmless error. *State v. Lytle* (1976), 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623, vacated in part on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154.

We believe that the other acts testimony admitted at trial meets the requirements set forth above for establishing identity or intent. The record reflects that Rayle was beaten severely about the head, chest and stomach, which is what appellant told George Reed he did to Rayle, and it is the same way Ziessler was beaten by appellant and Helms.

■ Appellant next claims that the instruction given to the jury at the close of evidence was erroneous and prejudicial. Following Ziessler's testimony, the trial court gave a limiting instruction as follows:

"Yes. Members of the Jury, you have just heard testimony that Guy Elliott may have committed another act similar to the one which is charged in this case.

"If you find that he did commit such act and that it is similar, you must limit your consideration of what you just heard.

"If you find from other evidence that Mr. Elliott did commit the act with which he is now charged, you may, if you need to do so, consider the evidence of the other act to determine the existence of the defendant's identity and his purpose in this case.

"However, evidence of other acts may not be considered as any proof whatsoever that the defendant did any act alleged in the indictment in this case."

In the general charge to the jury, the trial court deleted the last paragraph of the above instruction. Appellant's counsel objected to the deletion, but did not state the grounds for such objection. Crim.R. 30(A) provides that, in order for a party to assign as error the giving of a jury instruction, the party must have specifically stated the grounds for objection at the time the objection was made.

Since counsel did not specifically state the grounds for objection, this argument is not properly before us.

We note, however, that the instruction given at the time of Ziessler's testimony was in accord with appellant's request. Taking all the instructions as a whole, any error inherent in the omission of the last paragraph of the instruction is harmless.

Similar to the first assignment of error, appellant claims constitutional error in the admission of this testimony, but only mentions in passing the Ohio Constitution and makes no mention of the United States Constitution in his argument. Again, we decline to engage in a gratuitous discussion of any constitutional implications concerning the admission of this testimony as appellant has failed to comply with App.R. 16(A)(7).

Appellant's second assignment of error is overruled.

Appellant's third assignment of error is:

"Appellant was denied due process of law and a fair trial under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution as well as effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution by evidence of appellant's pre-arrest silence and prosecution comments thereupon and appellant's failure to testify."

For the sake of clarity, this assignment of error will be addressed in three subparts: (1) whether the trial court erred in admitting evidence of appellant's prearrest silence; (2) whether the prosecutor improperly commented upon appellant's prearrest silence and failure to testify; and (3) whether appellant received ineffective assistance of counsel due to counsel's failure to object to some of the evidence concerning appellant's prearrest silence and to the prosecutor's comments concerning prearrest silence and appellant's failure to testify.

Detective Crouse of the Hancock County Sheriff's Department testified concerning a telephone conversation he had with appellant on June 24, 1992, while appellant was staying with his brother in Georgia. He testified that appellant remained silent when told that Timothy Rayle was dead and also when Detective Crouse told him he had recovered some of appellant's clothing from his home and he believed the clothing would place appellant at the Dunkirk Quarry.

Lieutenant Routzon of the Findlay Police Department testified that he went to the Hardin County Sheriff's Department with the intention of talking to appellant. Although he saw appellant at the sheriff's office, he did not talk to him. The trial court sustained an objection to the prosecutor's question concerning why Lieutenant Routzon did not talk with appellant at that time.

Deputy Hinebaugh of the Hardin County Sheriff's Department testified that appellant came to the sheriff's office on June 26, 1992. Deputy Hinebaugh had a brief conversation with appellant at that time but appellant said nothing about the murder of Timothy Rayle.

■ The only objection made by appellant's counsel concerning any of the above testimony was to the question concerning the reason Lieutenant Routzon did not talk to appellant at the Hardin County Sheriff's Office. Since no objection was made to the other evidence of which appellant now complains, any error in its admission is waived unless it constitutes plain error.

"Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, 97, 7 O.O.3d 178, 181, 372 N.E.2d 804, 808. Admission of the testimony concerning appellant's prearrest silence does not constitute plain error. We further find that the probative worth of this evidence is not substantially outweighed by the danger of unfair prejudice. Evid.R. 403(A). See, also, *State v. Sabbah* (1982), 13 Ohio App.3d 124, 136–137, 13 OBR 155, 169, 468 N.E.2d 718, 731.

■ We now turn to that portion of appellant's third assignment of error which alleges that the prosecutor improperly commented in closing argument upon the evidence concerning appellant's prearrest silence and his failure to testify. The prosecutor's comments in closing argument relative to appellant's prearrest silence are:

"Then you have the conversation that took place between Sergeant Crouse and the defendant when he was confronted about the body being there; he was silent. He was confronted about the wallet being there; he was silent.

" * * *

"The defendant came back. He went to the Hardin County Sheriff's Department. Did not say anything to the deputy, Deputy Hinebaugh, and at the time, it was Sergeant Routzon. * * *"

■ Both parties are granted some degree of latitude in closing argument. *State v. Watson* (1991), 61 Ohio St.3d 1, 10, 572 N.E.2d 97, 106; *State v. Byrd* (1987), 32 Ohio St.3d 79, 82, 512 N.E.2d 611, 616, certiorari denied (1988), 484 U.S. 1037, 108 S.Ct. 763, 98 L.Ed.2d 780. The evidence concerning appellant's prearrest silence was introduced during trial without objection and the prosecutor was free to comment upon such evidence.

■ The prosecutor's comments in closing argument which appellant claims are comments upon his failure to testify are:

"This defendant has done everything to tell you that he wasn't there, but you heard no one say that, other than Mr. Reed, whose story, as far as this defendant being at his home when he met back up with them, is not supported in the evidence.

" * * *

"They all hung together. The only time they separated is when this defendant was advised that we had his wallet. He never had an explanation for why his wallet was there."

We find that these statements are not comments on appellant's failure to testify. " 'The prosecution is not prevented from commenting upon the failure of the defense to offer evidence in support of its case. *Lockett v. Ohio* (1978), 438 U.S. 586, 595 [98 S.Ct. 2954, 2959, 57 L.Ed.2d 973, 983] * * *.' *State v. Williams* (1986), 23 Ohio St.3d 16, 20, 23 OBR 13, 17, 490 N.E.2d 906, 911 [certiorari denied (1987), 480 U.S. 923, 107 S.Ct. 1385, 94 L.Ed.2d 699]." *State v. Watson,* 61 Ohio St.3d at 9, 572 N.E.2d at 106. The language in these comments would not " 'naturally and necessarily' " be taken by the jury as comments on appellant's failure to testify. *Id.*

We finally turn to appellant's claim that he was denied the effective assistance of counsel due to counsel's failure to object to the evidence concerning appellant's prearrest silence and to the prosecutor's comments discussed above. An appellate court will not reverse a conviction based upon a claim of ineffective assistance of counsel unless the appellant demonstrates that (1) counsel's performance was deficient; and (2) appellant's right to a fair trial was prejudiced by counsel's deficient performance. *State v. Carter* (1992), 64 Ohio St.3d 218, 224, 594 N.E.2d 595, 600, certiorari denied (1993), 507 U.S. ——, 113 S.Ct. 1330, 122 L.Ed.2d 715 (citing *Strickland v. Washington* [1984], 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692).

Having found no error in the admission of evidence concerning appellant's prearrest silence or in the prosecutor's comments in closing argument, we find no deficiency in the performance of appellant's counsel at trial. Appellant's third assignment of error is, therefore, without merit.

Having found no error prejudicial to appellant in any of the errors assigned, the judgment of the Court of Common Pleas of Mercer County is affirmed.

*Judgment affirmed.*

SHAW and HADLEY, JJ., concur.