DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Fremont Municipal Court which, after a trial to the bench, found defendant-appellant, John D. Chua, guilty of one count of voyeurism in violation of R.C. 2907.08(A). From that judgment and subsequent sentence, appellant assigns the following as error on appeal:
"ASSIGNMENT OF ERROR NUMBER ONE
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN UTILIZING EVIDENCE OF OTHER ACTS COMMITTED SUBSEQUENT TO THE OFFENSE AS EVIDENCE AGAINST THE DEFENDANT ON THE OCTOBER 28, 1998 CHARGE.
"ASSIGNMENT OF ERROR NUMBER TWO
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT FINDING THE DEFENDANT GUILTY OF VOYEURISM, IN VIOLATION OF OHIO REVISED CODE SECTION 2907.08(A) AS IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW."
On November 2, 1998, three complaints were filed in the Fremont Municipal Court charging appellant with one count of voyeurism and two counts of trespassing. The charges arose out of incidents that occurred at the Fremont Middle School on October 28 and 30, 1998. On October 28, 1998, at approximately 4:00 p.m., Nancy O'Connor, the mother of a member of the Fremont Middle School girls' swim team, noticed appellant stooped over and peering through a gap in the door to the girls' locker room at the school. On October 30, 1998, Michael Waring, the school custodian, saw appellant in the same hallway walking away from the direction of the girls' locker room and fondling himself. Appellant was then detained and subsequently charged with one count of voyeurism and one count of trespassing for the October 28 incident and one count of trespassing for the October 30 incident.
The cases proceeded to a bench trial on March 19, 1999 at which the following testimony was elicited. Nancy O'Connor testified that on Wednesday, October 28, 1998, she arrived at the Fremont Middle School between 3:30 and 4:00 p.m. to pick up her daughter from swim practice. As she turned to walk down the ramp to the girls' locker room, she noticed a man of oriental heritage bent over at the waist looking into the closed door of the girls' locker room. As O'Connor approached the locker room, the man, who O'Connor identified in court as appellant, moved away from the door and pulled up the collar on his shirt in an apparent attempt to hide his face. O'Connor testified that when she saw him in front of the locker room, appellant was wearing a red plaid flannel shirt, dark jeans and white sneakers. After appellant left, O'Connor went into the locker room and noticed that the girls were in various stages of undress. She then went back out into the hallway, closed the locker room door and noticed that when the door was closed there was a gap between the door and the door jamb through which one could see into the girls' locker room. She further testified that the gap was widest in the area where appellant appeared to be looking at the door. O'Connor then told the swim coach, Philip Moran, what she had seen.
Teresa Sanchez, a cafeteria employee at Fremont Middle School, next testified that on Thursday, October 29, 1998, she was driving by the school at approximately 4:00 p.m. when she noticed an oriental man in a red plaid shirt outside of the school. Sanchez stated that the man was going from door to door along the High Street side of the school, although she admitted that she did not actually see him try to open the doors. Sanchez further testified that her attention was drawn to the man because she had heard about the previous day's incident regarding an oriental man by the girls' locker room. The following day, Sanchez told a teacher and a custodian what she had seen.
Michael Waring, a Fremont Middle School custodian, then testified as to the events of Friday, October 30, 1998. Waring arrived at the school at around 3:00 p.m. to begin working his regular shift. Shortly before 4:00 p.m., he, Coach Moran and a Mr. Fate, the parent of a student, stepped outside of the High Street entrance to the school in hopes of seeing the suspect. They saw nothing and so Waring reentered the building to vacuum the hallway along the High Street entrance. Moments later, he saw appellant fondling his genital area with his right hand as he walked up the ramped hallway that leads to the girls' locker room. Waring stopped appellant and asked him what he was doing in the building. Appellant responded that he was there to watch free sports. Waring told appellant that there were no sporting events at that time and he would have to leave, although Waring then directed appellant out of the doors where he knew Coach Moran and Mr. Fate were standing. Coach Moran then detained appellant and also asked him what he was doing in the building. Again, appellant responded that he was there for free sports. Coach Moran also asked appellant if he had children at the school, to which appellant answered that he did not. Upon questioning by Coach Moran, appellant voluntarily agreed to go to the principal's office. Finally, Waring testified that after receiving notice of the gap in the door, he inspected it and realized that one could see into the girls' locker room through the gap. He therefore arranged to have the gap fixed.
Philip Moran, a teacher and girls' swim coach at Fremont Middle School, testified that he first saw appellant on Friday, October 30, 1998 when appellant was leaving the school at approximately 4:00 p.m. Because appellant fit the description of the man who had been seen in the school two days before, Moran stopped appellant to question him. Upon questioning by Moran, appellant stated that he did not have children in the school but that he was there to watch free sports. Moran further testified that appellant admitted to having been in the school earlier in the week. Moran then asked appellant if he would come back inside the building with him and appellant responded that he would. Moran then escorted appellant to Principal David Macri's office.
Principal Macri also testified at the trial below. Macri stated that he first saw appellant on October 30, 1998 at around 4:00 p.m. when Coach Moran and Waring brought appellant to his office. Upon questioning by Macri, appellant again stated that he was in the building for free sports and admitted that he had been there earlier in the week. Macri then told appellant that he was investigating stolen athletic equipment and called the police.
Nancy O'Connor was then recalled to the stand and testified that on October 30, 1998, she was again at the school and, in the principal's office, identified appellant as the man she had seen two days earlier.
Finally, Officer Patty Stein of the Fremont Police Department, testified that on October 30, 1998, she responded to a call at the Fremont Middle School where she questioned appellant about his reasons for being at the school. Appellant stated that he did not have any children at the school but was there to watch free sports. Appellant also denied being at the school two days prior. Officer Stein then placed appellant under arrest and charged him with voyeurism and trespassing for the October 28, 1998 incident and trespassing for the October 30, 1998 incident.
At the conclusion of Officer Stein's testimony, the state dismissed the trespassing charges. The only charge to be determined by the court was, therefore, the voyeurism charge. In his closing argument, however, the prosecutor argued that evidence that appellant was seen on October 30, 1998, walking away from the area of the girls' locker room fondling his genital area could be used to prove his motive or intent in looking into the locker room on October 28, 1998. Appellant objected but the objection was overruled.
On April 12, 1999, the trial court filed a judgment entry which included findings of fact and conclusions of law. In particular, the court addressed the issue of the admissibility of appellant's actions on October 30 to prove his intent or state of mind on October 28. The court held that appellant's acts on October 30, 1998 were sufficiently connected with his actions on October 28, 1998 and, therefore, could be used as evidence of his intent or motive on October 28. The court then held that the state had proven all of the elements of voyeurism beyond a reasonable doubt and so found appellant guilty of that offense. From that conviction and subsequent sentence, appellant now appeals.
Because his assignments of error are interrelated they will be addressed together. Appellant contends that the trial court abused its discretion in using evidence of a subsequent act as evidence that he committed the offense of voyeurism on October 28, 1998. He further asserts that because the court erred in using this evidence against him, his conviction was against the manifest weight of the evidence.
Voyeurism is proscribed by R.C. 2907.08, which reads in relevant part:
 "(A) No person, for the purpose of sexually arousing or gratifying the person's self, shall commit trespass or otherwise surreptitiously invade the privacy of another, to spy or eavesdrop upon another."
Appellant was charged with and convicted of voyeurism for his actions on October 28, 1998. Appellant contends, however, that there was no evidence that his actions on October 28 were for the purpose of sexual arousal or gratification and that the trial court's use of appellant's subsequent actions to find purpose was erroneous.
R.C. 2945.59 is titled "Proof of defendant's motive" and reads in relevant part:
 "In any criminal case in which the defendant's motive or intent * * * is material, any acts of the defendant which tend to show his motive or intent * * * in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
Similarly, Evid.R. 404(B) provides:
 "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
These provisions therefore create an exception to the common law rule regarding the inadmissibility of other acts evidence and as such must be strictly construed against admissibility. State v.Broom (1988), 40 Ohio St.3d 277, paragraph one of the syllabus. Where, however, "* * * the other act does in fact `tend to show' by substantial proof any of those things enumerated, such as proof of motive [or] * * * intent, * * * then evidence of the other act may be admissible." Id. "When using other acts evidence to show the defendant's intent, the offense for which the defendant is being tried and the other act must have occurred reasonably near to each other and a similar scheme, plan or system must have been utilized to commit the offense at issue and the other offenses." State v.Elliott (1993), 91 Ohio App.3d 763, 771. In State v. McCornell
(1993), 91 Ohio App.3d 141, 146, the court set forth the following test for determining the admissibility of other acts evidence:
 "The court must determine that (1) the other act is relevant to the crime in question * * * and (2) evidence of other acts is relevant to an issue placed in question by the conduct of the present trial. * * * The court, in addition to determining relevancy, must pay attention to other factors, examples of which are: (1) the time of the other act, * * * (2) the accused's modus operandi, * * * (3) the nature of the other acts committed, and (4) location of the other acts * * *." (Citations omitted.)
In the present case, appellant was seen in or around the Fremont Middle School at approximately the same time for three days in a row. On October 28 and 30, he was seen in the vicinity of the girls' locker room, and on October 28 he was seen bending down and peering into the girls' locker room through a gap in the door. Immediately after this occurred, Nancy O'Connor entered the locker room and saw girls in various forms of undress. Two days later, appellant was seen walking away from the vicinity of the girls' locker room fondling his genital area. In our view, appellant's actions on October 30 were relevant to the voyeurism charge and were relevant to the issue of appellant's motive or intent (sexual gratification) that was placed in question by the voyeurism charge. Because the actions occurred close in time and in a similar scheme, plan or system, this is the type of case in which other acts evidence was properly admitted as evidence of appellant's motive or intent.
Accordingly, the trial court did not abuse its discretion in admitting evidence of appellant's subsequent actions as evidence of his motive or intent in peering into the girls' locker room on October 28, 1998.
We similarly find that appellant's conviction for voyeurism was not against the manifest weight of the evidence. In evaluating a trial court's decision under a manifest weight standard, an appellate court sits as a "thirteenth juror" and may disagree with the fact finder's resolution of the conflicting testimony.State v. Thompkins (1997), 78 Ohio St.3d 380, 387. The appellate court, "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'"Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
Upon a review of the entire record in this case, we cannot find that the conviction was against the manifest weight of the evidence. In addition to the evidence that appellant was fondling himself in the vicinity of the girls' locker room on October 30, 1998, there is simply no innocent explanation for his peering into the girls' locker room on October 28, 1998. His explanation to the school authorities on October 30, 1998 that he was at the school to watch free sports could easily be viewed as not credible. Accordingly, the evidence supports a finding that on October 28, 1998, appellant surreptitiously invaded the privacy of another by spying for the purpose of sexually arousing or gratifying himself.
Appellant's assignments of error are therefore not well-taken.
On consideration whereof, the court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Fremont Municipal Court is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
HANDWORK, J., RESNICK, J., PIETRYKOWSKI, J., CONCUR.