JOURNAL ENTRY AND OPINION
Defendant-appellant Edward Walker appeals his conviction in the Cuyahoga Court of Common Pleas for gross sexual imposition. For the following reasons, we affirm the decision of the trial court.
This case arose from allegations that defendant had sexual contact with his fifteen-year-old niece ("S.J.") while at the home of his mother and the child's grandmother.
On November 20, 2000, the Cuyahoga County Grand Jury indicted defendant on one count of gross sexual imposition, in violation of R.C. 2907.05. On April 3, 2001, the trial began.
At trial, S.J. testified that defendant first molested her at the age of ten when he fondled her and made sexual advances toward her at her grandmother's house. She stated that she told her mother about the incident but that the police were not informed. She then testified about the events leading to the incident at hand. She stated that on the afternoon of July 25, 2000, defendant called her while she was at her grandmother's house and made sexually explicit remarks to her. She stated that defendant then came over to her grandmother's house and started to fondle her breasts while she was folding clothes in her grandmother's bedroom. She stated that after she told the defendant to stop and struck his hand, they began arguing and she threatened to tell on him. She testified that defendant gave her $10.00 to keep quiet and then asked her what he could get for $100.00. After defendant left the room, she wrote a note, detailing what her uncle had done to her.
Shortly after, she left her grandmother's house with her mother. In the car, S.J. gave her mother the $10.00 and the note that she had written about what defendant had done. Her mother told her that they would talk about the incident later. Her mother then left S.J. at home while she took her cousin to the emergency room. That evening, while her mother was away, S.J. called her cousin and told her what happened. Her cousin told her to call the defendant's wife and tell her what happened. S.J. called the defendant's wife, Joyce Walker, and told her that defendant offered her $100.00 to have sex with her. She testified that Joyce was very upset and exchanged words with the defendant. She stated that defendant got on the phone, called her a liar, and threatened to come to her house and kill her. After she got off the phone, she called the police. When the police arrived at the house, S.J. was pacing in the driveway and crying. She made a police statement. She also made a statement to Sheila Gamble of Children Services and Detective Essie Howard of the Cleveland Police Sex Crimes Unit.
In addition to the victim, the State called the child's mother. She testified that S.J. had told her that defendant had fondled her when she was ten years old, and that S.J. was upset and crying as she recounted the events. She further testified that on July 25, 2000, S.J. gave her a note detailing what the defendant had done to her. She continued to cry as she gave her the note. She testified that S.J. also verbally told her that the defendant had touched her breasts and that she wanted him to stop. She testified that after she came home from taking her cousin to the hospital, she found the police at her house. She said the police told her about the phone call between the defendant and her daughter. She stated that the defendant called her that night to deny the incident and ask what it would take to "squash" the matter.
The State called Officer Daniel Finn of the Cleveland Police Department. Officer Finn testified that he responded to the 911 call placed from S.J. He stated that she was crying and upset when he arrived. She told him that she was scared that her uncle was trying to hurt her. He stated that he waited outside the house to see if the defendant would appear, but he did not. Finally, Officer Finn testified that S.J. gave him a copy of her diary.
The State also called Sheila Gamble, a social worker with Children and Family Services, who testified that S.J. told her what happened on July 25, 2000. Ms. Gamble testified that she also interviewed the defendant and that he denied the allegations. She stated that there was no medical evidence to support S.J.'s allegations and that her final case disposition noted that this was an unsubstantiated case because the child said it happened and the defendant denied it.
Finally, the State called Detective Essie Howard of the Cleveland Police Department Sex Crimes Child Abuse Unit. She testified that she interviewed S.J., her mother and the defendant as part of her investigation. She testified that defendant denied the incident. She stated that she recommended the case be brought before the Grand Jury. Following the State's case-in-chief, defendant made a Crim.R. 29 motion for acquittal, which the trial court denied.
Defendant presented three witnesses on his behalf: his brother, Michael Walker, his mother, Bernice Walker, and his wife, Joyce Walker. Michael testified that he was at the house on July 25, 2000 and that the defendant and S.J. were never alone. He also says that he did not hear any yelling or raised voices. Next, Bernice testified. She stated that she did not notice anything wrong with S.J. when she arrived at her house after the alleged incident and that she did not tell her that anything had happened. She also stated that she was not told of the incident that allegedly happened when S.J. was ten years old. Finally, Joyce testified. She described the phone conversation with S.J. and stated that S.J. threatened to take their home, their car, and their money. She also testified that she had never had a good relationship with S.J. or her mother. Defendant renewed his Crim.R. 29 motion for acquittal after he presented his case-in-chief, but the trial court again denied his motion.
The jury found defendant guilty of gross sexual imposition as charged in the indictment and defendant was sentenced to two years of community controlled sanctions with varying conditions. Defendant has timely appealed raising three assignments of error. We will address defendant's assignments of error in the order asserted and together where it is appropriate for discussion.
 I. THE TRIAL COURT IMPROPERLY ADMITTED OTHER ACTS EVIDENCE CONCERNING AN ALLEGED AND UNCHARGED INCIDENT BETWEEN THE APPELLANT AND THE ALLEGED VICTIM FIVE YEARS PRIOR TO THIS ALLEGED INCIDENT IN VIOLATION OF EVID.R. 404(B), 2945.59 AND THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION.
In his first assignment of error, defendant argues that the trial court erred in allowing the State to elicit testimony from S.J. about an act of molestation by the defendant that occurred five years prior to the indictment in this case. We disagree.
As a general rule, evidence which tends to show that the accused has committed other crimes or acts independent of the crime for which he stands trial is not admissible to show that the defendant acted in conformity with his bad character. State v. Elliott (1993),91 Ohio App.3d 763, 770. However, Evid.R. 404(B) states that other acts testimony may be admissible for purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
Evidence regarding prior acts of molestation upon the same victim, even if not included in the indictment, has been permitted in numerous Ohio jurisdictions, including this one. In State v. Cantrall (Apr. 17, 1986), Cuyahoga App. No. 50307, unreported, the trial court allowed the child victim to testify about sexual acts not charged in the indictment since the other acts were "inextricably related" to the defendant's alleged course of conduct and formed a background "necessary to give a complete picture of the alleged crime." In State v. Ponce (Oct. 10, 1996), Franklin App. No. 95AP11-1450, unreported, the child victim's testimony about previous sexual advances played an "integral part in explaining the sequence of events and was necessary to give the jury a complete picture of the crimes with which defendant was charged." See, also, State v.White (Dec. 17, 1998), Licking App. No. 98CA0063, unreported (evidence of the defendant's past sexual activity with the child victim was material to the case).
Here, evidence of defendant's previous sexual advances toward the victim was presented in an attempt to provide a background of the alleged crime. Such other acts were inextricably related to the current charge of gross sexual imposition and were necessary to give the jury a complete picture of the crime for which defendant was charged. Ibid.
On the record before us, the probative value of the evidence was not substantially outweighed by the possibility of unfair prejudice. Statev. Mathews (1984), 14 Ohio App.3d 440. Therefore, the trial court did not err by admitting evidence of the previous sexual advances toward the victim.
Defendant's first assignment of error is overruled.
 II. THE EVIDENCE IS INSUFFICIENT TO CONVICT THE APPELLANT.
 III. THE VERDICT IS AGAINST THE WEIGHT OF THE EVIDENCE.
In his second and third assignments of error, defendant challenges the adequacy of the evidence presented at trial. Specifically, defendant claims that the State failed to present sufficient evidence to support his conviction for gross sexual imposition and that his conviction for gross sexual imposition is against the manifest weight of the evidence. We disagree and find that an evaluation of the weight of the evidence is dispositive of both issues in this case.
The sufficiency of the evidence produced by the State and weight of the evidence adduced at trial are legally distinct issues. State v.Thompkins (1997), 78 Ohio St.3d 380, 386. When reviewing the sufficiency of the evidence, an appellate court's function is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion.Id. at 390. When a defendant asserts that his conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Otten (1986), 33 Ohio App.3d 339, 340.
Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. State v. Roberts (Sept. 17, 1997) Lorain App. No. 96CA006462, unreported at 4.
Here, defendant was convicted of gross sexual imposition, in violation of R.C. 2907.05(A)(1), which states in pertinent part, "no person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender * * * when * * * the offender purposely compels the other person * * * to submit by force or threat of force." Sexual contact is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).
At trial, S.J. testified that defendant molested her when she was ten years old and when she was fifteen years old. She testified that she was upset and scared. She testified that she told her mother, her cousin and the defendant's wife. She testified that defendant threatened to kill her. She gave the same account of the events to the social worker, Sheila Gamble, and to Detective Essie Howard of the Sex Crimes Unit. S.J.'s mother confirmed that she had told her about the incidents. She testified that S.J. was upset and crying as she told her. She testified that defendant called her and asked her to "squash" the matter.
Defendant argues that the State's witnesses were not credible and that the evidence did not support his conviction for gross sexual imposition. We disagree. The jury had the opportunity to view the witnesses' testimony and adjudge their credibility; therefore, we must give deference to the jurors' judgments. See State v. Lawrence (Dec. 1, 1999) Lorain App. No. 98CA007118, unreported at 13. Upon careful review of the testimony and evidence presented at trial, we hold that the jury did not act contrary to the manifest weight of the evidence in convicting defendant of gross sexual imposition. Consequently, we conclude that defendant's assertion that the State did not produce sufficient evidence to support a conviction, therefore, is also without merit. Accordingly, defendant's second and third assignments of error are overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TERRENCE O'DONNELL, J., CONCURS. PATRICIA A. BLACKMON, P.J., CONCURS INJUDGMENT ONLY.