JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Michael Williamson appeals his conviction in the Court of Common Pleas for rape. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} This case arose from allegations that defendant had sexual relations with his seven-year-old stepdaughter over an extended period of time.
 {¶ 3} Defendant was indicted by the Cuyahoga County Grand Jury for twelve counts of rape of a minor, in violation of R.C. 2907.02. On December 17, 2001, the trial began.
 {¶ 4} At trial, the victim testified that she was seven years old at the time of the rapes. She testified that her stepfather, the defendant, touched her breasts and private areas, and forced her to perform oral sex over forty times. She stated that he played dirty movies for her and her two brothers. She stated that two of her girlfriends would come over to play and that defendant would take them into a room and when they came out of the room, the girls looked scared and would want to leave. She testified that she did not tell her mother about any of these events because she was scared that she would not believe her. She also testified that she made several attempts to tell her mom, but that the defendant would enter the room and tell her to leave. She stated that her grandmother was the first person she told about defendant's actions.
 {¶ 5} In addition to the victim, the State called Sally Weindorf, a social worker with Children and Family Services, who testified that the victim told her what happened on April 20, 2001. She testified that she received a referral that the victim was being molested by her stepfather. Weindorf testified that the victim identified her defendant as the violater. Weindorf referred the victim to Dr. David Bar-Shain for an examination.
 {¶ 6} The State called Dr. Bar-Shain. He testified that he first met the victim on June 4, 2001, as the result of a referral from Children and Family Services. The victim allowed Dr. Bar-Shain to perform an internal physical examination and described the sexual assaults in detail. He opined that sexual abuse probably occurred.
 {¶ 7} The State called Officer James Simone of the Cleveland Police Department. He testified that on the evening of April 20, 2001, he met with the victim and Weindorf after they filed a rape complaint against the defendant. He testified that when he arrested the defendant at his home, he kept calling the victim a "f______ whore."
 {¶ 8} The State also called Jolanda Mason, a social worker and surrogate parent with House of New Hope Foster Care Agency. She testified that she met the victim in April 2001. She testified that the victim is currently not doing well in school and suffers from flashback nightmares about the defendant as well as nightmares about the defendant trying to kill her and her foster family. Finally, the State called Roxie Blakley, the victim's grandmother. She testified that the victim spent the weekend with her and her husband in early March 2001, and told her what her stepfather had been doing to her. She testified that she did not tell the victim's mother, her daughter, because she did not think her daughter would do anything about it. She testified that she called social services on April 20, 2001 and reported the defendant's behavior.
 {¶ 9} The defense presented six witnesses: Lois Fears, Michael Tracinski, Teresa Williamson, Dorothy Gudat, Rachel Williamson and Michael Williamson, himself. Ms. Fears, a friend, testified that she drove the victim to and from school and watched the victim and her brothers after school while the parents worked. She testified that she never saw or heard anything during that time. On cross-examination, she admitted that she would leave the house when the defendant came home from work.
 {¶ 10} Next, Michael Tracinski, the victim's natural father, testified. He testified that Roxie Blakley, the victim's grandmother, had accused him of sexual wrongdoing with the victim when she was two years old, but that he had been cleared of all charges.
 {¶ 11} Next, Teresa Williamson, the victim's mother, testified. She testified that her daughter had once been molested by a prior boyfriend's friend. She testified that her mother had made accusations of possible molestation against Tracinski, her ex-husband, and a baby-sitter, but that neither turned out to be true. She stated that she did not believe that defendant watched dirty movies with the victim or that he molested her. She also stated that the victim never told her that defendant did anything to her. On cross-examination, Teresa admitted that in her initial statement to the police, after the defendant was arrested, she stated that she believed her daughter and did not think she was making up stories. She also admitted that her relationship with the defendant was violent and that he had tried to run her over with his car while she was pregnant with their child. She also admitted that the defendant engaged in drug usage, but stated that he did not use in front of her and that she did not know to what extent because he did it while she was out of the house.
 {¶ 12} Next, Dorothy Gudat testified. She testified that she is the grandmother of one of the victim's friends and that she had no knowledge if her granddaughter had ever spent the night at the victim's home.
 {¶ 13} Next, Rachel Williamson testified. She is the sister of the defendant. She testified that she babysat for the victim and her brothers while their parents were at work. She testified that she never saw or heard defendant do anything inappropriate to the victim during that time. She also stated that two days before the defendant was arrested for rape, she had asked the victim if the defendant had ever touched her and that she had said no. On cross-examination, she was questioned as to statements she had made to Weindorf at the time of the initial investigation. She stated that Weindorf was lying and denied making any statements about domestic violence or drug usage in the home or being threatened by defendant if she testified at trial.
 {¶ 14} Finally, defendant testified on his own behalf. He testified that he did not force the victim to perform oral sex on him and denied having sexual contact with her. He also testified that he never watched dirty movies with the victim and that he did not smoke marijuana in front of the kids. On cross-examination, defendant stated that he was a strict father, but denied physically abusing the kids or his wife. He stated that his kids were lying when they said they saw him use drugs in the house. He also denied calling the victim a "f______ whore."
 {¶ 15} On December 21, 2001, the jury found defendant guilty of twelve counts of rape as charged in the indictment. Defendant appeals the verdict and raises two assignments of error for our review.
 {¶ 16} "I. The trial court committed plain error by permitting the prosecutor (1) to elicit inadmissible, irrelevant and highly prejudicial hearsay testimony, (2) to cross-examine defense witnesses regarding the truth of additional inadmissible, irrelevant and highly prejudicial hearsay statements not in evidence, and (3) to argue the truth of further irrelevant, inadmissible and highly prejudicial hearsay statements not in evidence to the jury in closing argument."
 {¶ 17} In this assignment of error, defendant claims that he was unfairly prejudiced when the trial court made erroneous evidentiary rulings.
 {¶ 18} Defendant first argues that the trial court allowed inadmissible hearsay when it permitted Sally Weindorf to testify that the victim told her that the defendant used drugs and was physically abusive to all members of the household. We disagree.
 {¶ 19} A young rape victim's statements to a social worker are admissible as an exception to the hearsay rule provided the statements were made in the course of physical or psychological treatment. Evid.R. 803(4); State v. Chappell (1994), 97 Ohio App.3d 515, 531; State v.Walker (June 27, 2002), Cuyahoga App. Nos. 79586 79695; State v.Kurpik (June 27, 2002), Cuyahoga App. No. 80468; State v. Grooms (Aug. 19, 1998), Summit App. No. 18558.
 {¶ 20} Here, Weindorf, a social worker from the Cuyahoga County Department of Children and Family Services, interviewed the victim and received a detailed statement and history from her. This interview resulted in the victim being placed in foster care, as well as being referred for further physical and psychological examinations. Indeed, Dr. Bar-Shain testified that he relied upon the information from Weindorf's interview in treating the victim. (Tr. 332). Accordingly, we find that these statements were made during examinations of the victim that were conducted in order to properly diagnose and treat her. Defendant next argues that the trial court should not have permitted the State to question defense witnesses regarding acts of domestic violence and drug usage by the defendant not charged in the indictment. We disagree.
 {¶ 21} As a general rule, evidence which tends to show that the accused has committed other crimes or acts independent of the crime for which he stands trial is not admissible to show that he acted in conformity with his bad character. State v. Elliott (1993),91 Ohio App.3d 763, 770. However, Evid.R. 404(B) states that other acts testimony may be admissible for purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."
 {¶ 22} Evidence of physical, emotional, and verbal abuse upon the victim or other family members, even if not included in the indictment, has been permitted in numerous jurisdictions, including this one. InState v. William (Oct. 7, 1999), Cuyahoga App. No. 74840, evidence of physical and psychological abuse which transpired in a home between the abuser and the victim was relevant and probative of a method of control used to force sex upon the victim, and was inextricably related to the charge of rape and gross sexual imposition. See, also, State v. Martin
(Dec. 6, 1990), Cuyahoga App. No. 58648; State v. Black (Feb. 10, 1994), Cuyahoga App. No. 64686; State v. Sexton (March 9, 1998), Stark App. Nos. 1996CA00306, 1006CA00367.
 {¶ 23} Here, evidence of the physical violence that occurred in the household between defendant and Teresa and the three children were relevant to and probative of the method of control used by defendant to rape and sexually abuse the victim. Such other acts were inextricably related to the charge of rape. See Ibid.
 {¶ 24} On the record before us, the probative value of the evidence was not substantially outweighed by the possibility of unfair prejudice. State v. Matthews (1984), 14 Ohio App.3d 440. Thus, the trial court did not err by admitting evidence of the violence that occurred in the household by defendant.
 {¶ 25} In addition, we note that the complained-of testimony was admissible for purposes of impeaching Teresa Williamson and Rachel Williamson as prior inconsistent statements under Evid.R. 613(B) which provides in pertinent part:
 {¶ 26} "(B) Extrinsic evidence of prior inconsistent statement of witness. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded a prior opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(D)(2)."
 {¶ 27} Here, both Teresa and Rachel were given the opportunity to admit, deny or explain that they had given prior inconsistent statements to Sally Weindorf during the initial investigation. Both witnesses denied making any statements about physical violence, threats, and drug usage and further stated that Weindorf was lying. Defense counsel had the opportunity, by way of redirect, to interrogate the witnesses, and in fact did so. Thus, the State adequately laid a proper foundation as to prior inconsistent statements.
 {¶ 28} Defendant's first assignment of error is overruled.
 {¶ 29} "II. Appellant was denied the effective assistance of counsel where counsel failed to enter rudimentary objections and grossly mishandled an exculpatory witness by failing to offer his testimony, failing to adequately proffer that his testimony would have been that he coached the alleged victim's accusations, and failing to file a motion for new trial based upon this exculpatory witness's more detailed post-verdict statements."
 {¶ 30} In his second assignment of error, defendant claims that his trial counsel was deficient in various respects and that he was denied his constitutional right to the effective assistance of counsel. We disagree.
 {¶ 31} In order for this court to reverse a conviction on the grounds of ineffective assistance of counsel, we must find that (1) counsel's performance was deficient and (2) that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. Strickland v. Washington (1984), 466 U.S. 668, 687. Counsel's performance is deficient if it falls below an objective standard of reasonable representation. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id., at paragraph three of the syllabus. Strategic or tactical decisions made by defense counsel which are well within the range of professionally reasonable judgment need not be analyzed by a reviewing court.Strickland, supra.
 {¶ 32} Defendant first argues that his trial counsel performed deficiently by failing to object to the other acts evidence. We disagree. In the first assignment of error, the evidence of defendant's physical abuse and drug usage were held to be admissible. Since the evidence was properly admissible, counsel's failure to object was not prejudicial. Thus, defendant was not rendered ineffective assistance of counsel. See Bradley, supra.
 {¶ 33} Next, defendant claims that he was unduly prejudiced when his trial counsel "grossly mishandled an exculpatory witness." We disagree.
 {¶ 34} Prior to the start of trial, defense counsel produced Neiswonger, a handicapped man that paid rent and lived within the defendant's household, as a witness for the defense.[1] Defense counsel proffered that Neiswonger was going to testify that he also molested the victim. (Tr. 737-49). The trial court determined that Neiswonger's testimony was being introduced for the purpose of contradicting the victim's testimony[2], and was not exculpatory in nature. (Tr. 748, 864). We agree. A witness may not be impeached by evidence that merely contradicts her testimony on collateral matters. State v. Boggs (1992),63 Ohio St.3d 418, 422. Since no defense to the charge of rape against the defendant would be implicated by Neiswonger's testimony that he also molested the victim, that issue was irrelevant to the matter. Accordingly, since the evidence was not properly admissible, counsel's failure to call Neiswonger as a witness was not prejudicial. Thus, defendant was not rendered ineffective assistance of counsel. SeeBradley, supra.
 {¶ 35} Defendant also claims that at the time of sentencing, defense counsel discovered that Neiswonger was going to testify that he coached the victim regarding her accusations against defendant. The record does not support this argument. Indeed, the transcript shows that Neiswonger was present at the sentencing and declined to make any statement. (Tr. 857-859).
 {¶ 36} Finally, defendant claims that his trial counsel performed deficiently by failing to object to the victim's testimony that the defendant had molested two of her girlfriends. We disagree. The record fails to reveal that the victim testified that defendant had molested two other girls. Rather, the victim stated that the defendant called the girls into another room of the house and when they came out they looked scared and did not want to play anymore. (Tr. 454).
 {¶ 37} Defendant's second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, P.J., and PATRICIA A. BLACKMON, J., CONCUR.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. 112, Section 2(A)(1).
[1] The case was set for trial on three separate occasions. Neiswonger did not come forward until the third trial. In addition, Neiswonger never made a statement to the police or social services.
[2] During trial, the victim denied that Neiswonger touched her inappropriately or molested her. (Tr. 474, 485).