This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Anthony Divincenzo, appeals the judgment of the Medina County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On the morning of January 8, 2005, Appellant approached Curtis Hofer who was removing snow at an apartment complex in Brunswick, Ohio. Appellant was in a state of panic and urgently requested Mr. Hofer's help. Appellant explained that he had been abusing cocaine all night and that a man was pursuing him and trying to kill him. Mr. Hofer told him that he could not help and that he should find someone else to help him. Mr. Hofer then realized he had his mobile phone and phoned the police. Mr. Hofer did not see anyone that appeared to be following Appellant. The police arrived shortly thereafter.
 {¶ 3} In the meantime, Appellant ran to a nearby house and tried to break a window. At around 9:00 a.m., Appellant approached Linville Hughes who was in his driveway shoveling snow. Appellant told Mr. Hughes that he needed help and that someone was going to "shoot us." Mr. Hughes sensed that Appellant was acting abnormally and walked toward his door to call the police. Appellant followed Mr. Hughes through the open garage to a door and forced his way in to the house. Appellant does not dispute that he was not invited to enter Mr. Hughes' home. Once inside, Appellant repeatedly stated that he needed a gun and began searching the home. Appellant damaged blinds in one room when he moved them to peer out the window. Shortly after Appellant entered his home, Mr. Hughes called the police. Thereafter, Appellant took two steak knives from the kitchen. He carried them with him as he wandered around the house. He eventually proceeded back out to the garage where Mr. Hughes and his wife, Delores, kept two vehicles. Mr. Hughes followed Appellant to the garage because he feared that he would steal one of his vehicles. Appellant entered the driver's side of Mr. Hughes' truck and tried to operate the controls, but the keys to the truck were located inside the Hughes' home. Appellant then exited the vehicle and brushed by Mr. Hughes as he re-entered the house. Once inside, Appellant entered the Hughes' bedroom where he encountered Mrs. Hughes. Mrs. Hughes directed Appellant out of the house where he surrendered to police. Police ordered Appellant to drop the knife and lower himself to the ground. He complied and was placed under arrest.
 {¶ 4} On January 20, 2005, Appellant was charged with one count of aggravated burglary, in violation of R.C. 2911.11(A)(2), a felony of the first degree. On February 14, 2005, Appellant pled not guilty to the charge. Appellant's case proceeded to trial before a jury in September 2005. The jury found Appellant guilty of aggravated burglary and Appellant was sentenced to three years incarceration with credit for fifty days served. Appellant timely appealed his conviction, raising seven assignments of error for our review. We have combined several of Appellant's assigned errors to facilitate our review.
 II. ASSIGNMENT OF ERROR I "APPELLANT'S CONVICTION OF AGGRAVATED BURGLARY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]"
 ASSIGNMENT OF ERROR II "APPELLANT'S CONVICTION OF AGGRAVATED BURGLARY WAS BASED UPON INSUFFICIENT EVIDENCE."
 ASSIGNMENT OF ERROR III "THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S CRIMINAL RULE 29 MOTION FOR ACQUITTAL FOLLOWING THE CONCLUSION OF THE STATE'S CASE AND FOLLOWING THE CONCLUSION OF THE ENTIRE CASE."
 {¶ 5} In Appellant's first three assignments of error, he contends that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence and that the trial court, therefore, erred in failing to grant his Crim.R. 29 motion for acquittal.
 {¶ 6} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id.
 {¶ 7} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). Further,
 "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
Therefore, we will address Appellant's claim that his conviction was against the manifest weight of the evidence first, as it is dispositive of Appellant's claim of insufficiency.
 {¶ 8} When a defendant asserts that his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 9} Appellant was convicted of aggravated burglary in violation of R.C. 2911.11(A)(2), which provides that
 "No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if * * * "The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control."
 {¶ 10} The State presented six witnesses. Appellant testified and presented three witnesses. Linville Hughes testified for the State. Mr. Hughes testified that after Appellant told him that someone was trying to shoot him and that they should call 9-1-1, Mr. Hughes started to walk towards the house. Appellant followed him. Once Mr. Hughes realized that Appellant was following him, he told Appellant to stay outside and informed him that he would go inside to call 9-1-1. Appellant then followed Mr. Hughes to the garage. Appellant "jostled" around Mr. Hughes and entered the house before him. At trial, Mr. Hughes described this interaction in the following manner:
 "Whether he pushed, jostled, or what, I don't know, but he come [sic] around me. There was something with the contact from the rear, nothing severe, but I'm not very stable with my walk because I've had three operations, there's a plate's [sic] in my back and front with a rod. Well, he went into the house first."
Once inside, Appellant repeatedly told Mr. Hughes that he needed a gun. Mr. Hughes informed Appellant that there were no guns in the house. Appellant then wandered around the house, turning over household items and looking underneath the beds. He tore down the blinds and curtains in one bedroom. By this time Mr. Hughes had phoned 9-1-1. Once Appellant determined that there was no gun, he ventured into the dining room. There, Appellant opened a few cupboard drawers and took out two knives. Appellant then turned and went back out the door to the garage. Mr. Hughes followed Appellant out to the garage. Appellant opened the driver's side door of Mr. Hughes' SUV and got in the vehicle. He tried to manipulate the dashboard instruments of the car. Mr. Hughes estimated that Appellant was in the vehicle for thirty seconds. Appellant then exited the vehicle and again pushed past Mr. Hughes to re-enter his home. On direct examination, Mr. Hughes described the interaction as follows:
 "A: How did he get back into [the house] the same way he did the first time. "* * * "A: He got out of the vehicle — because I was out there to see what was going on — and he come [sic] out — now, I'm not going to say he pushed me, I'm not going to say he didn't, I just know that I felt the contact. And he came through in front of me and pushed his way through the door. There is no other way to say it. "* * * "Q: Was the door closed? "A: The door was closed, yes. "Q: So he opened the door — "A: Yes. "Q: — as he was pushing you aside? "A: Yes."
 {¶ 11} He testified that Appellant did not have permission to enter his home or take his knives. While Appellant never threatened Mr. Hughes with a knife, Mr. Hughes testified that he felt threatened by Appellant.
 {¶ 12} Brunswick Police Officer Chris Spencer also testified for the State. Officer Spencer responded to the Hughes' residence on January 8, 2005 to assist Officer Stask. Officer Spencer testified that once he arrived at the Hughes' house, he talked with Mr. Hughes who informed him that there was an individual inside his home who was carrying a knife and that his wife was also inside the home. Shortly after Officer Spencer arrived, Appellant exited the home, holding a knife in his hand. Officer Spencer ordered Appellant to drop the knife and lower himself to the ground. Appellant complied with both orders. The officers then arrested Appellant. Officer Spencer also testified that a knife like the one Appellant was carrying is an object that is capable of inflicting death or great bodily harm.
 {¶ 13} Delores Hughes also testified for the State. Mrs. Hughes explained that she first encountered Appellant when he walked into her bedroom where she was dressing. When he entered the bedroom, Appellant was carrying two of her kitchen knives. He later dropped one. While in the bedroom, Appellant tried to open the window, lifted up the mattress and looked under the bed. Appellant left the bedroom, went down the hall and exited the house through the front door. Mrs. Hughes testified that Appellant damaged a few sets of blinds and some decorative items. Mrs. Hughes additionally testified that Appellant never verbally threatened to harm her and did not attempt to harm her.
 {¶ 14} Appellant testified as follows. He is married and has one daughter from a previous relationship. He and his wife own their own automobile repair business. This incident marks his first arrest. On Friday, January 7, 2005, he and his friends, Fred Filhower and Glenville and Reagan McFarland met at Mr. Filhower's house. The group abused cocaine and marijuana. At some point, Fred left to pick up a female friend. When he returned, he asked the other three to leave. Appellant and the McFarlands took some cocaine and marijuana and traveled to the McFarland's house. Once there, the three continued to use cocaine and marijuana. The McFarlands tried to convince Appellant to engage in group sex. Appellant undressed but did not engage in intercourse with the McFarlands. At one point, Mr. McFarland threatened Appellant that he would kill him if he did not engage in intercourse with them. Appellant immediately became frightened, grabbed his clothing and ran out of the apartment to his car. His car was stuck in the snow so he was unable to move it. He thought Glenville was chasing him with a gun so he left the car on and ran in circles around the apartment complex. At some point, he ran into Curtis Hofer. He told Mr. Hofer to call the police. Mr. Hofer told Appellant to find someone else to help him. He continued to run until he found a house with a security sign. Appellant figured that if he broke the window, the police would respond. Appellant failed to break the window.
 {¶ 15} Appellant eventually encountered Mr. Hughes. He asked Mr. Hughes to call the police and explained that he had been using cocaine all night and that a guy he was with had a gun and was trying to kill him. Appellant saw someone in the yard next door and thought the man was Mr. McFarland. He then went into Mr. Hughes' home with him to obtain protection. Once inside, he repeatedly ordered Mr. Hughes to call the police. He ran around the house looking for a gun. Appellant then ran out to Mr. Hughes' garage and let himself in Mr. Hughes' truck. He noticed a man standing outside the garage and thought the man was Mr. McFarland. Appellant then ran back inside the house and grabbed a kitchen knife. He proceeded to run around the house and eventually encountered Mrs. Hughes in her bedroom. Once he heard sirens, he ran out the front door to greet the police.
 {¶ 16} According to Appellant, he did not intend to hurt Mr. and Mrs. Hughes and further, did not intend to steal anything from them. He stated that he is very embarrassed about the situation.
 {¶ 17} On cross-examination, Appellant admitted that he did not see Mr. McFarland chasing him at any time. Appellant stated that he did not break into the Hughes' home, however, he admitted that he entered into the home uninvited.
 {¶ 18} Joe D'Agostino testified on Appellant's behalf. Mr. D'Agostino stated that he has been friends with Appellant since the first grade. He thinks Appellant is a good, honest man and has never known Appellant to threaten anyone. On cross-examination, Mr. D'Agostino testified that he knew Appellant used drugs but did not know he used cocaine until he heard about the January 2005 incident.
 {¶ 19} Kevin Sorg also testified for Appellant. Mr. Sorg testified that he met Appellant a year before the trial when Appellant brought his daughter to sing in the children's choir at Royal Redeemer. Mr. Sorg is the director of the children's music and worship technology at Royal Redeemer Lutheran Church. Mr. Sorg testified that Appellant became a member of his church a few months after the January 2005 incident.
 {¶ 20} John Young, a family friend of Appellant's, also testified on his behalf. He testified that Appellant is a peaceful person. On cross-examination, Mr. Young also testified that he did not actually know all of the facts surrounding Appellant's arrest and admitted that he probably should have investigated the facts prior to testifying on Appellant's behalf at trial.
 {¶ 21} Upon review of the evidence, we find that Appellant's conviction is supported by the manifest weight of the evidence. To establish the elements of aggravated burglary, the State was required to prove, beyond a reasonable doubt, that Appellant (1) trespassed in the Hughes' home by use of force, stealth or deception, while another person other than Appellant was present, (2) Appellant entered the Hughes' home with the purpose to commit a criminal offense inside, and (3) Appellant trespassed while carrying a deadly weapon or dangerous ordnance.
 {¶ 22} Neither party disputes that (1) Appellant entered the Hughes' home without their permission, (2) that he entered the home to find a gun, (3) searched the house for a gun, (4) obtained a steak knife from the Hughes' kitchen, and (5) took the knife with him as he exited the Hughes' home. Appellant contends that his conviction is against the manifest weight of the evidence because the State failed to prove that he exerted force to enter the Hughes' home. We are not persuaded.
 {¶ 23} The Ohio Supreme Court has held that a defendant does not have to gain entrance to a structure by force in order to satisfy the force element of aggravated burglary. State v. Steffen (1987),31 Ohio St.3d 111, 115 (holding that the appellant who lawfully entered the victim's home lost his privilege to remain in the victim's parent's home when he commenced his assault on her). In the instant case, Mr. Hughes testified that he specifically instructed Appellant to remain outside while he went in the house to call the police. Appellant disregarded those instructions and entered against Mr. Hughes' will. UnderSteffen, even assuming Appellant lawfully entered the home, the jury was justified in inferring that Appellant's privilege to remain in the Hughes' home terminated the moment he took the knives and began ransacking their home.
 {¶ 24} Moreover, we find that Appellant used force in entering the home. R.C. 2901.01(A)(1) defines force as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." The aggravated burglary statute does not specify the amount of force necessary to establish this element. This Court has upheld an aggravated burglary conviction where the defendant pushed his way into the slightly ajar door of an apartment. State v. Kimbrough (Sept. 21, 1994), 9th Dist. No. 93CA005625, *5. Mr. Hughes testified that Appellant "pushed, jostled or whatever" him to first obtain entrance into the house. When Appellant attempted to re-enter the home after trying to operate Mr. Hughes' truck, he again pushed Mr. Hughes aside. This time, Appellant was armed with a kitchen knife. We find that Appellant's actions constitute "force" as defined in R.C. 2901.01.
 {¶ 25} Appellant further contends that he did not enter the premises with the intent to commit a criminal offense once inside. However, Appellant testified that he entered the Hughes' home with the intention of obtaining a gun. Moreover, he admitted that he took a knife from the Hughes' kitchen. On cross-examination, he specifically testified that he "robbed [the Hughes] of those items." Even if Appellant did not form the intent to take the gun or knife until he entered the home, his actions still satisfy the intent element. The Ohio Supreme Court has upheld a conviction for aggravated burglary where the defendant entered an unlocked apartment without criminal intent and later formed the intent when he committed a violent crime inside. State v. Fontes (2000),87 Ohio St.3d 527, at syllabus.
 {¶ 26} We find that the jury's verdict convicting Appellant of aggravated burglary was not against the manifest weight of the evidence. As this Court has disposed of Appellant's challenge to the weight of the evidence, we similarly dispose of his challenge to its sufficiency.Roberts, supra, at *2. Necessarily included in this court's determination that the jury verdict was not against the manifest weight of the evidence, is a determination that the evidence was also sufficient to support the conviction. Id. Accordingly, Appellant's first, second and third assignments of error are overruled.
 ASSIGNMENT OF ERROR IV "THE TRIAL COURT ERRED IN PERMITTING THE STATE OF OHIO TO INTRODUCE AND SOLICIT WITNESS TESTIMONY SPECULATING AS TO APPELLANT'S MOTIVATION AND PURPOSE FOR ENTERING THE VEHICLE."
 {¶ 27} In Appellant's fourth assignment of error, he contends that the trial court erred in permitting the State to introduce testimony regarding his motivation and purpose for entering the Hughes' truck.
 {¶ 28} The standard of review regarding challenges to the trial court's admission of evidence is whether the trial court abused its discretion. State v. Sage (1987), 31 Ohio St.3d 173, 180. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. An abuse of discretion demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. Id.
 {¶ 29} Appellant first challenges the admission of testimony from Mr. Hughes that he thought Appellant was trying to steal his vehicle. Appellant contends that he was prejudiced by the admission of this testimony as it was the only evidence against him to support the conclusion that he had an intent or purpose to commit a crime while within the structure. We disagree.
 {¶ 30} First and foremost, Appellant has failed to provide authority in support of his claim that this testimony was improper. He only alleges that Mr. Hughes should not have been permitted to speculate as to Appellant's motivation for entering the vehicle. Testimony regarding Appellant's intent is directly relevant to establishing whether Appellant had a "purpose to commit in the structure * * * any criminal offense." Furthermore, this testimony was admissible pursuant to Evid. R. 701, which states that "[i]f the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those * * * which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue." Mr. Hughes' testimony was not improper as it was "rationally based on [his] perception of events transpiring before him", specifically his observation that Appellant was inside Mr. Hughes' vehicle in his garage, trying to operate the controls. See State v. Stojetz (1999), 84 Ohio St.3d 452, 463 (holding that witness' testimony regarding victim's mindset at time of attack was not improper because it was "rationally based on [witness'] perception of events transpiring before him"). Accordingly, Mr. Hughes testified as to the reasonable inferences he drew from his observations of Appellant.
 {¶ 31} Assuming, arguendo, that the trial court abused its discretion in permitting this testimony, this error is harmless. If there is no reasonable possibility that improperly admitted evidence contributed to Appellant's conviction, then the admission constitutes harmless error.State v. Elliott (1993), 91 Ohio App.3d 763, 771, citing State v.Lytle (1976), 48 Ohio St.2d 391, at paragraph three of syllabus. The State set forth substantial evidence to prove Appellant's intent and his commission of criminal offenses while in the Hughes' home, including (1) Appellant's intention to obtain a firearm from the Hughes, (2) Appellant's acquisition of at least one knife from the Hughes and (3) the damage Appellant caused to the Hughes' house. Accordingly, we find that the admission of evidence regarding his intent to steal the vehicle was harmless error. Appellant's fourth assignment of error is overruled.
 ASSIGNMENT OF ERROR VI "THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY ON THE LESSER INCLUDED OFFENSE OF CRIMINAL TRESPASSING."
 {¶ 32} In his sixth assignment of error, Appellant argues that the trial court erred in failing to instruct the jury on the lesser included offense of criminal trespassing. We disagree.
 {¶ 33} When reviewing a trial court's jury instructions, this Court reviews the record to determine whether the trial court's decision to give or decline to give a requested jury instruction constitutes an abuse of discretion under the facts and circumstances of the case.State v. Wolons (1989), 44 Ohio St.3d 64, 68.
 {¶ 34} Criminal trespass is a lesser included offense of aggravated burglary. See State v. Leavitt (Mar. 25, 1994), 11th Dist. No. 92-L-197, at *4. While a crime may constitute a lesser included offense, it does not follow that a lesser included offense instruction is mandatory; "[a]n instruction on a lesser — included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser — included offense." State v. Carter (2000), 89 Ohio St.3d 593, 600.
 {¶ 35} In the instant matter, the trial court gave an instruction on a fourth degree felony burglary, in addition to the aggravated burglary instruction, but did not give an instruction on criminal trespass. R.C.2911.12(A)(4) defines burglary as follows:
 "No person, by force, stealth, or deception, shall do any of the following: "* * * "Trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present."
R.C. 2911.21(A)(1) prohibits criminal trespass and provides:
 "No person, without privilege to do so, shall * * * [k]nowingly enter or remain on the land or premises of another[.]"
 {¶ 36} The trial court determined that the facts did not warrant a criminal trespass instruction because Appellant testified that he entered the Hughes' home without their permission. While criminal trespass is an element of burglary and aggravated burglary, the trial court had discretion to decline to give the criminal trespass instruction. The State presented ample evidence that Appellant committed aggravated burglary. Appellant testified that he entered the residence without the Hughes' permission, and intended to take a gun from them. Therefore, Appellant could not demonstrate that the evidence supported both an acquittal on the crime charged (aggravated burglary) and a conviction on the lesser included offense (criminal trespass). Moreover, any error in declining to give this instruction is harmless as we have determined that Appellant's conviction was supported by the manifest weight of the evidence. State v. Elliott (1993), 91 Ohio App.3d 763,771, citing State v. Lytle (1976), 48 Ohio St.2d 391, at paragraph three of syllabus. An instruction on criminal trespass would not have changed the outcome as Appellant was convicted of aggravated burglary, the more egregious offense.
 {¶ 37} As a result, under the facts and circumstances presented here, we cannot say that the trial court's refusal to give an instruction on the lesser included offense was unreasonable or arbitrary. Accordingly, the trial court did not abuse its discretion in refusing to give the requested jury instruction. Appellant's sixth assignment of error is overruled.
 ASSIGNMENT OF ERROR V "THE TRIAL COURT ERRED IN PERMITTING THE STATE OF OHIO TO INTRODUCE AND SOLICIT WITNESS TESTIMONY THAT APPELLANT INVOKED HIS RIGHT TO COUNSEL DURING HIS INTERVIEW WITH THE INVESTIGATING AUTHORITIES."
 ASSIGNMENT OF ERROR VII "THE TRIAL COURT ERRED IN INSTRUCTING THE JURY ON THE OFFENSE OF CRIMINAL MISCHIEF AS AN OFFENSE TO SUPPORT THE FINDING OF ANY CRIMINAL OFFENSE."
 {¶ 38} In his fifth assignment of error, Appellant argues that the trial court erred in permitting the State to introduce testimony that Appellant invoked his right to counsel during his interview with police. In his seventh assignment of error, Appellant asserts that the trial court erred in instructing the jury on the offense of criminal mischief.
 {¶ 39} Appellant has failed to point this Court to any specific evidence in the record to support his fifth and seventh assignments of error. "It is the duty of the appellant, not this court, to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record." State v. Taylor (Feb. 9, 1999) 9th Dist. No. 2783-M, at *3. See also, App. R. 16(A)(7). "It is not the function of this court to construct a foundation for [an appellant's] claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal." Kremer v.Cox (1996), 114 Ohio App.3d 41, 60. This Court may disregard arguments if Appellant fails to identify the relevant portions of the record upon which the errors are based. See App.R. 12(A)(2). See also, Smith v.Akron Dept. of Public Health, 9th Dist. No. 21103, 2003-Ohio-93, at ¶ 28. Appellant bears the burden of affirmatively demonstrating the error on appeal, and substantiating his arguments in support. Angle v.Western Res. Mut. Ins. Co. (Sept. 19, 1998), 9th Dist. No. 2729-M, at *1; Frecska v. Frecska (Oct. 1, 1997), 9th Dist. No. 96CA0086, at *2. See, also, App.R. 16(A)(7). As Appellant's argument fails to comply with the foregoing appellate rule requirements, he has failed to meet his burden on appeal. We are unable to conclude that the trial court erred and we find that Appellant's fifth and seventh assignments of error are without merit.
 III. {¶ 40} Appellant's seven assignments of error are overruled, and the judgment of the Medina County Common Pleas Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal. We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.