JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Eliut Caraballo appeals from Cuyahoga County Common Pleas Court judgment finding him guilty of aggravated burglary and sentencing him to three years in prison. For the following reasons, we affirm.
 {¶ 2} In May 2005, the Cuyahoga County Grand Jury indicted Caraballo on aggravated burglary, in violation of R.C. 2911.11, and aggravated robbery, in violation of R.C. 2911.01. Both counts included one-and three-year firearm specifications. Caraballo entered a plea of not guilty and the case proceeded to a jury trial where the following evidence was presented.
 {¶ 3} The events giving rise to these charges occurred on April 23, 2005.
 {¶ 4} Jennifer Wiseman testified she was living with her boyfriend, Timothy Coon, and her stepfather, Harry Spence, when she was "robbed at gunpoint." She explained that she was laying on her couch when she heard a young girl giggling outside. She looked through her blinds, and saw the daughter of Marcella Ratcliff (Caraballo's co-defendant). Wiseman only knew the girl's first name as "Marie" (the girl was later determined to be Ratcliff s 14-year-old daughter, Marie Yates).
 {¶ 5} Wiseman got up to go outside, but then she saw Ratcliff standing in her house. Wiseman said that her doors were not locked, but she did not give Ratcliff consent to be in her home. Ratcliff told Wiseman that she had spoken to *Page 2 
Spence (her former boyfriend), who at the time was in the Cleveland "workhouse for a DUI," and he had told her that she could have some of his money that was in his room. Wiseman did not believe Ratcliff because she had been paying Spence's bills since he had been in the workhouse.
 {¶ 6} Wiseman refused to give Ratcliff any money or allow her to search Spence's room. They began to argue, and Ratcliff began pushing Wiseman toward the steps to Spence's room. Wiseman then noticed a man (later identified as Caraballo) with a gun in his hand standing in her living room. Wiseman had never seen the man before and described him as a light-skinned male with "funny eyes" and a "scary looking eyebrow." Immediately upon seeing him, Wiseman sat on her couch and put her head between her legs because she was "terrified."
 {¶ 7} Ratcliff directed the man to take both of Wiseman's cell phones so that she could not call the police. The two then stole her purse, which she testified contained $10,000.
 {¶ 8} After they left, Wiseman woke up Coon, who had been sleeping heavily from medication, and used his cell phone to call the police. Wiseman said that she knew where Ratcliff lived but did not know her address, so she and Coon drove there to get it. They spoke with Ratcliff s landlord, Jonathan Brooks, who indicated that Ratcliff had just stopped there and gave him $1,000. When *Page 3 
Wiseman told Brooks that Ratcliff had just taken money from her, Brooks gave the money to Wiseman.
 {¶ 9} Wiseman also spoke to Ratcliff s two youngest children, who told her that Ratcliff was out with a man named "Noodles" (later determined to be Caraballo's nickname). Wiseman agreed that it was Ratcliff s daughter, Yates, who led her to Caraballo's home.
 {¶ 10} Wiseman subsequently filed a complaint at the Cleveland Police Department with Detective Elliot Landrau and identified Caraballo from a photo array.
 {¶ 11} Cleveland Police Officer Leroy Brinkoff testified that on April 23, 2005, he responded to a radio call at Ratcliff s house. When he got there, he spoke to Wiseman, Brooks, and Yates. Wiseman told him that she had been "robbed at gunpoint" by Ratcliff and a Hispanic male. Yates also told him that she, her mother, and a Hispanic male, whom she only knew as "Elle something," went to Wiseman's house that day.
 {¶ 12} Officer Brinkoff said that Ratcliff denied Caraballo being present when she went to Wiseman's home. She said she only went there with her daughters. At first, Ratcliff told Officer Brinkoff that she went there to "borrow $800 from the victim's [stepdad's] room for court costs," but later said she went to buy marijuana. Ratcliff also "tried to blame her daughter," and told Officer *Page 4 
Brinkoff that Yates was lying when she said Caraballo was there. Officer Brinkoff arrested Ratcliff for aggravated robbery and aggravated burglary.
 {¶ 13} Detective Landrau testified that he interviewed Ratcliff on April 25, 2005. He corroborated Officer's Brinkoff's testimony, stating that Ratcliff blamed Yates. Ratcliff told him that she had gone to Wiseman's house to buy marijuana, but that Yates had gone into Wiseman's house, and came out with "something." Ratcliff claimed that Yates "fabricated" the story because she got scared.
 {¶ 14} Detective Landrau also obtained the name of Jerry English from Wiseman. English had found and returned Wiseman's phone to her a couple of days after the incident. English also gave Detective Landrau the name and address of a man he knew only as "Noodles."
 {¶ 15} Following the state's case-in-chief, Caraballo moved for a Crim. R. 29 acquittal. The trial court granted it in part as to the firearm specifications (because the state failed to present sufficient evidence that the firearm was operable), but denied it as to the underlying charges of aggravated burglary and aggravated robbery.
 {¶ 16} Ratcliff testified on behalf of Caraballo. She indicated that she pled guilty to robbery in this matter, and served one year in prison from October 2005 to October 2006. *Page 5 
 {¶ 17} Ratcliff said that Wiseman sold marijuana and was a "heavy drug user." Ratcliff explained that she went to Wiseman's house with her three children to purchase marijuana for Brooks. Ratcliff said she waited in the car, while Yates went up to the door to see if anyone was home. Yates came back to the car, told her that no one was home, and had "a purse, some cell phones, [and] cigarettes."
 {¶ 18} Ratcliff said she drove back to her house and gave Brooks some of the money. She did not know what happened to the rest of the money. She further explained that she then drove to Caraballo's house to give him the cell phones because "[h]e had pawned his mother's" cell phone.
 {¶ 19} On cross-examination, Ratcliff stated that she pled guilty to robbery because "obviously [she] was driving the car," and to protect her daughter from prosecution.
 {¶ 20} Yates also testified on behalf of Caraballo. She essentially corroborated Ratcliff's testimony. She stated that she stole Wiseman's purse and cell phones. She further said that she gave the money to her mom. Yates further stated that after they left Wiseman's house, her mother took her and her sisters home before she went to Caraballo's house. While Ratcliff was still at Caraballo's, Yates said that Wiseman and Coon showed up angry and called the police. Yates also said that she told police that Caraballo was the one who stole everything because she did not want to get into trouble. *Page 6 
 {¶ 21} The jury found Caraballo guilty of aggravated burglary, but not guilty of aggravated robbery. The court sentenced Caraballo to three years in prison and five years of postrelease control.
 {¶ 22} Caraballo appeals, raising the following two assignments of error:
 {¶ 23} "[1.] There was insufficient evidence to convict Mr. Caraballo of aggravated burglary.
 {¶ 24} "[2.] The conviction of appellant was against the manifest weight of the evidence."
 Sufficiency of the Evidence {¶ 25} In his first assignment of error, Caraballo contends that the state did not present sufficient evidence to convict him of aggravated burglary. We disagree.
 {¶ 26} Sufficiency of the evidence is the legal standard which is applied to determine whether the evidence is legally sufficient to support a jury verdict as a matter of law. State v. Thompkins (1997),78 Ohio St.3d 380, 386. Legal sufficiency is a test of adequacy and is a question of law. Id., citing State v. Robinson (1955), 162 Ohio St. 486. When determining sufficiency of the evidence, we must consider whether, after viewing the probative evidence in a light most favorable to the prosecution, any rational trier of fact could have found all the elements of the offense proven beyond a reasonable doubt. State v.Shaffer, 11th Dist. No, 2002-P-0133, 2004-Ohio-336, ¶ 17. *Page 7 
 {¶ 27} In order to convict Caraballo of aggravated burglary, the state had to establish that (1) he trespassed in Wiseman's home by use of force, stealth, or deception, (2) while someone other than "an accomplice" (i.e., Ratcliff) was present, (3) with the purpose to commit "any criminal offense" inside, (4) while carrying a deadly weapon or dangerous ordnance. State v. Gardner, 118 Ohio St. 3d 420,2008-Ohio-2787, ¶ 32, citing R.C. 2911.11(A)(2).
 {¶ 28} A person commits a trespass when, without privilege to do so, he knowingly enters or remains on the land or premises of another. R.C. 2911.21(A) (1). A defendant does not have to gain entrance to a structure by force in order to satisfy the force element of aggravate burglary. See State v. Divincenzo, 9th Dist. No. 05CA0105-M,2006-Ohio-6330, at _23, citing State v. Steffen (1987),31 Ohio St.3d 111, 115. In Steffen, the Supreme Court reasoned that even if the defendant had been initially invited into the victim's home, that privilege was terminated and revoked upon the defendant committing a crime in the victim's home.
 {¶ 29} Caraballo only raises sufficiency arguments regarding the first and fourth elements of aggravated burglary. He claims: (1) that the state did not prove that he trespassed on Wiseman's property because the evidence did not "place" him at Wiseman's house; and (2) that the evidence did not establish that he had a deadly weapon. *Page 8 
 {¶ 30} Wiseman identified Caraballo (both in court and in a photo array) as the man who came into her home with Ratcliff, without privilege to do so, holding a gun in his hand. She further testified that he took her cell phones and purse, while she held her head between her legs because she was terrified. Wiseman's testimony alone, viewed in a light most favorable to the prosecution, is sufficient not only"place" Caraballo at Wiseman's home for the purpose of trespass, but also to establish trespass by force, stealth, or deception.
 {¶ 31} Wiseman's testimony also negates Caraballo's argument relating to the deadly weapon element. Again, her testimony, in a light most favorable to the prosecution, was legally sufficient to support a jury verdict finding that Caraballo had a deadly weapon on him when he entered Wiseman's home without consent. To the extent that Caraballo claims Wiseman's testimony was not credible, that argument relates to the manifest weight of the evidence and not a sufficiency challenge.
 {¶ 32} Caraballo further claims that the trial court's dismissal of the firearm specifications conclusively demonstrates that there was insufficient evidence to establish that he had a deadly weapon. We disagree.
 {¶ 33} Ohio courts have repeatedly recognized that a trial court may find insufficient evidence as to a firearm specification, but nevertheless find sufficient evidence as to the element of a deadly weapon as part of an offense. See generally, State v. Clemmons (Aug. 26, 1994), 2d Dist. No. 14093; State v. Lucas *Page 9 
(Aug. 26, 1986), 10th Dist. No. 86AP44; State v. Boyce (1985),21 Ohio App.3d 153. "A firearm specification is merely a sentence-enhancing statute that comes into play after a defendant is convicted of the underlying felony." State v. Rice (July 10, 1992), 6th Dist. No. 91FU000018, citing State v. Loines (1984), 20 Ohio App.3d 69, 72. Therefore, an offense with a deadly weapon may stand with or without a firearm specification.
 {¶ 34} Indeed, Caraballo's argument fails to consider the critical distinction between a firearm specification and the element of having a deadly weapon on or about your person. To convict a defendant on a firearm specification, the state must prove that a firearm is operable at the time of the offense. See State v. Vondenberg (1980),61 Ohio St.2d 285. Conversely, to survive a motion for acquittal on an aggravated burglary count, the state only has to prove that the defendant had a deadly weapon on or about his person. See R.C. 2911.11(A)(2). Given Wiseman's testimony that Caraballo had a gun in his hand, the state met its burden.
 {¶ 35} Caraballo's first assignment of error is overruled.
 Manifest Weight of the Evidence {¶ 36} In his second assignment of error, Caraballo argues that his conviction for aggravated burglary was against the manifest weight of the evidence. *Page 10 
 {¶ 37} Although a judgment of a trial court is sustained by sufficient evidence, an appellate court may nevertheless find that the verdict is against the manifest weight of the evidence. Thompkins, supra, at 387, citing Robinson, supra, at 487. Sitting as the "thirteenth juror" in a manifest weight argument, an appellate court reviews the entire record, weighs the evidence and all the reasonable inferences, considers the credibility of the witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.
 {¶ 38} In assessing the credibility of the witnesses, "the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." State v. Awan (1986),22 Ohio St.3d 120, 123. The fact finder is free to believe all, part, or none of the testimony of each witness appearing before it. Warren v.Simpson (Mar. 17, 2002), 11th Dist. No. 98-T-0183.
 {¶ 39} Applying this standard, we cannot say that Caraballo's conviction for aggravated burglary was against the manifest weight of the evidence. We find no merit to Caraballo's claim that the jury clearly "lost its way" simply because it believed Wiseman, an alleged drug user, over Yates and Ratcliff. *Page 11 
 {¶ 40} Despite evident weaknesses in Wiseman's testimony, the record also indicates many inconsistencies in Ratcliff's and Yates' testimony. Yates' testimony was inconsistent with the statements she made to Officer Brinkoff on the day of the burglary. Officer Brinkoff testified that both Wiseman and Yates indicated that there was a male present at the scene of the crime. Yates identified the man's name as "Elle something," later confirmed to be Caraballo, and Wiseman's physical description matched Caraballo. And while Yates later recanted her statement to Detective Landrau, she did this days after the incident.
 {¶ 41} Conversely, Wiseman, who had no connection to Caraballo and no apparent motive to implicate him, testified that he was standing in her home with a gun. Notably, Yates initially corroborated this testimony. Despite not knowing Caraballo, Wiseman later identified him in a photo array and made an in-court identification of him. Based on these circumstances, the jury easily could have found Wiseman's testimony more credible.
 {¶ 42} Accordingly, the second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from the appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ANTHONY O. CALABRESE, P.J., and MARY EILEEN KILBANE, J., CONCUR *Page 1