JOURNAL ENTRY AND OPINION
{¶ 1} Burrell Hannah appeals his conviction on one count of attempted murder/felonious assault and one count of having a weapon under disability. He claims that his conviction is against the manifest weight of the evidence and that the trial court erred in admitting other acts evidence in violation of Evid.R. 404(B). We affirm.
 {¶ 2} The record reveals that in the early morning hours of July 10, 2005, an unknown gunman shot into the home of Jacquelyn Hannah. The next morning, her home was again the target of a second gun shot, and Ms. Hannah notified the police. She also spoke of the incidents with her son, Burrell Hannah.
 {¶ 3} On July 12, 2005, Damario Harmon attended a barbecue at the Lakeview Terrace apartments located in the area of W. 25th Street known as "the Loop." Harmon stayed at the barbecue for the entire evening and left at approximately 2:00 a.m. He entered his car and, while he fumbled for a CD to put in the car's stereo, a white Chevy Lumina drove up to his car and blocked his exit.
 {¶ 4} A man that Harmon recognized from the neighborhood as Burrell Hannah exited the Lumina and asked Harmon if he had been "looking for" Burrell. A few words were exchanged and Burrell fired approximately five or six gunshots into Harmon's car and immediately fled. Jamie Byrd, a friend of Harmon's, heard the commotion and ran to the car to help. He moved Harmon from the driver's side of the car and drove him to the hospital.
 {¶ 5} Shortly thereafter, Cleveland police officer Paul Beckwith arrived at the scene of the incident and was approached by Antez Smith. Smith told him that Harmon had been shot and was en route to the hospital. Smith also gave the officer spent shell casings he had found near the scene. Sometime later, Harmon's girlfriend, Lashaunda Houston, gave Detective Gregory Cook a cell phone she had found near the scene. Detective Cook later determined that the cell phone belonged to Benita Barnes, Burrell's girlfriend.
 {¶ 6} Harmon was taken to Lutheran West hospital, and was then transferred to MetroHealth Medical Center because of the extent of his injuries. While Harmon was being transferred to the operating room, a pellet fell from his body. Harmon's chief surgeon reported this information to Detective Cook, who then recovered the pellet.
 {¶ 7} Following several leads that Burrell was the shooter, Burrell was interrogated by Detective Mickey Shank. Burrell told the detective that he had purchased a gun for protection after the shooting of his mother's house, and that he only fired the weapon in response to Harmon first brandishing his own weapon. Burrell then admitted shooting Harmon and told the detective that the gun could be found in the basement rafters of Ms. Barnes' home. The gun was recovered and tests were conducted comparing the gun with the pellets recovered from the hospital. It was then determined that the pellet positively matched the weapon recovered from Ms. Barnes' home.
 {¶ 8} As a result, Burrell was indicted on one count of attempted murder, in violation of R.C. 2923.02 and R.C. 2903.02; two counts of felonious assault, in violation of R.C.2903.11; and one count of having a weapon under disability, in violation of R.C. 2923.13.
 {¶ 9} A jury trial began on October 31, 2005, on the above charges, and a simultaneous bench trial began on the final charge of having a weapon under disability. Hannah was convicted on all counts. He was sentenced to eight years on the merged attempted murder/felonious assault counts with a consecutive three-year firearm specification and one year on the having a weapon under disability count, for an aggregate sentence of twelve years. Hannah appeals from his conviction in two assignments of error which state:
 "I. PREJUDICIAL ERROR WAS COMMITTED BY THE ADMISSION OF OTHER ACTS TESTIMONY IN VIOLATION OF R.C. 2945.59, EVID.R. 404(B) AND THE APPELLANT'S RIGHTS UNDER ARTICLE 1, SECTION 16 OF THE OHIO CONSTITUTION AND THE 14th
AMENDMENT OF THE UNITED STATES CONSTITUTION. II. APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS APPELLANT PROVED SELF-DEFENSE BY A PREPONDERANCE OF THE EVIDENCE."
 {¶ 10} In his first assignment of error, Burrell asserts error in the trial court's admission of testimony concerning Burrell's alleged robbery of two other men. He contends that this evidence fails to meet the exceptions to admissibility found in Evid.R. 404(B) or R.C. 2945.59
and, therefore, should have been excluded.
 {¶ 11} Evid.R. 404(B) provides that:
 "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformitytherewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 12} The standard of review for questions regarding the admission of evidence is an abuse of discretion. State v. Soke (1995),105 Ohio App.3d 226, 249. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980), 62 Ohio St.2d 151,157.
 {¶ 13} Generally, the admission or exclusion of evidence is left to the sound discretion of the trial court. State v. Maurer (1984),15 Ohio St.3d 239, 265. However, evidence tending to prove that the accused has committed other acts independent of the crime for which he is on trial is inadmissible to show that the defendant acted in conformity with his bad character. State v. Gumm, 73 Ohio St.3d 413, 426, 1995-Ohio-24;State v. Sundermeier (Aug. 30, 1996), Ottawa App. No. OT-95-061.
 {¶ 14} However, Evid.R. 404(B) sets forth the following exceptions to this general rule:
 "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. "Similarly, R.C. 2945.59, Proof of defendant's motive, states: "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
 {¶ 15} Other bad acts may be admitted if "(1) there is substantial proof that the alleged other acts were committed by the defendant, and (2) the evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." State v. Lowe, 69 Ohio St.3d 527, 530, 1994-Ohio-345, citingState v. Broom (1988), 40 Ohio St.3d 277, 282-283; Evid.R. 404(B); R.C.2945.59. Furthermore, as the rule is the codification of common law, it is to be construed against admissibility. Lowe, supra.
 {¶ 16} In order to establish that evidence as to other acts falls within this exception, the State must demonstrate that the defendant utilized "an identifiable scheme, plan, or system" to commit the crime.State v. Elliott (1993), 91 Ohio App.3d 763. Scheme, plan or system testimony of other acts is admissible to establish motive or intent where the similarities in the crimes indicate there is a strong likelihood that the offender in the solved crime also committed the unsolved crime. State v. Coleman (1988), 37 Ohio St.3d 286, at paragraph three of the syllabus. In State v. Flonnory (1972), 31 Ohio St.2d 124,126, the court held that R.C. 2945.59 permits the showing of other acts when such other acts tend to show certain things, e.g., motive and intent, as set forth in the statute.
 {¶ 17} The first reference to any alleged robbery of "Julio and Tay" was elicited during defense counsel's cross-examination of Lashaunda Houston. Tr. at 337. Counsel never objected to her statement and continued his questioning of the witness. When the State further questioned Ms. Houston as to this robbery, defense counsel still failed to note an objection. Tr. at 342. Further, Burrell himself testified that Harmon approached him regarding the robbery of Julio. Tr. at 580-581.
 {¶ 18} The failure to object to this testimony waives all but plain error. State v. Childs (1968), 14 Ohio St.2d 56, paragraph three of the syllabus. We can find no plain error in the admission of the testimony concerning an alleged robbery. Houston's reference to the robbery was isolated and of minor significance given the gravity of the offenses for which Burrell was being tried. Further, we can see no evidence that admission of testimony regarding the robbery played a role in establishing Burrell's character in an attempt to prove that he had, in fact, committed the robbery.
 {¶ 19} Burrell's first assignment of error lacks merit. In his second assignment of error, Burrell asserts that his conviction was against the manifest weight of the evidence.
 {¶ 20} In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror and intrudes its judgment into proceedings that it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury which has clearly "lost its way." State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52. As the Ohio Supreme Court declared:
 "Weight of the evidence concerns `the greater inclination of the greater amount of credible evidence offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' Id. at 387. * * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id. (Internal citations omitted.)
 {¶ 21} However, this court should be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact, and a reviewing court must not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the State has proven the offense beyond a reasonable doubt.State v. DeHass (1967), 10 Ohio St.2d 230, at paragraphs one and two of the syllabus. The goal of the reviewing court is to determine whether the new trial is mandated. A reviewing court should grant a new trial only in the "exceptional case in which the evidence weighs heavily against a conviction." State v. Lindsey, 87 Ohio St.3d 479, 483,2000-Ohio-465.
 {¶ 22} We note that we must make every reasonable presumption in favor of the judgment and findings of fact of the trial court. Karches v.Cincinnati (1988), 38 Ohio St.3d 12, 19. In fact, this court has stated that "[a] conviction may be upheld even when the evidence is susceptible to some possible, plausible, or even reasonable, theory of innocence."State v. Cremeans, 9th Dist. No. 22009, 2005-Ohio-261, at paragraph 7.
 {¶ 23} Burrell maintains that he acted in self-defense. As such, the affirmative defense of self-defense places the burden of proof on a defendant to establish the defense by a preponderance of the evidence.State v. Caldwell (1992), 79 Ohio App.3d 667, 679.
 "In order to establish a general claim of self-defense, the defendant must show (1) that he was not at fault in creating the situation giving rise to the affray, (2) that he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of deadly force, and (3) that he did not violate any duty to retreat or avoid the danger." Id. "If the defendant fails to prove any one of the elements, he has failed to demonstrate that he acted in self-defense." State v. Jackson (1986), 22 Ohio St.3d 281, 284.
 {¶ 24} Burrell's testimony at trial was that he purchased the gun after his mother's house was shot. Tr. at 578. Although the gun was for protection, he then stated that he did not know who shot into his mother's house. Tr. at 584. He also testified that he did not know that it was Harmon who shot into the house. Tr. at 584. He then testified that on the night of the incident, he was not looking for Harmon, but that he ran into him by chance after dropping off a friend who lived in the same neighborhood that Harmon was visiting. Tr. at 580. Burrell then insisted that he only shot Harmon after Harmon first brandished a weapon. Tr. at 581.
 {¶ 25} However, other evidence presented at trial was that Harmon did not carry a gun, and did not have one on the night he was shot. Tr. at 376, 392, 419, 464, 524, 551. Further, Jamie Byrd, who drove Harmon's car to the hospital, testified that he did not see a gun in Harmon's car on the night of the incident. Tr. at 358. This testimony was supported by Officers Mickey Shank and Gregory Cook who reported that nothing in the investigation revealed that Harmon had a weapon. Tr. at 464, 524. Instead, several witnesses testified that they saw a white Chevy Lumina speeding toward Harmon's car and that the car appeared to block Harmon in and prevent him from leaving the scene. Tr. at 269, 317, 382, 521. Burrell admitted to driving Benita Barnes' white Chevy Lumina on the night of the incident, and Detective Shank traced the car involved in the incident as Ms. Barnes' white Chevy Lumina. Tr. at 444, 579.
 {¶ 26} As the factfinder, the jury is entitled to reconcile any differences and inconsistencies in the testimony and determine that the manifest weight of the evidence supported a finding of guilt and, therefore, did not support a finding that Burrell acted in self-defense. See State v. DeHass (1967), 10 Ohio St.2d 230. This court will not overturn a judgment because the jury "preferred one version of the testimony over the other." State v. Hall (Sept. 20, 2000), Summit App. No. 19940.
 {¶ 27} The evidence in the record is clear that Burrell created the situation giving rise to the incident. He approached Harmon and positioned his car to block Harmon's exit. He then exchanged words with Harmon and shot him while Harmon was seated in his car. Moreover, nowhere in the record is there evidence indicating an attempt on Burrell's part to withdraw from the conflict, as outlined under the third prong of a self-defense claim. See Caldwell, supra. The evidence presented at trial persuades us that the trier of fact neither lost its way nor created a manifest miscarriage of justice in convicting the defendant of attempted murder and rejecting his claim of self-defense.
 {¶ 28} Burrell's second assignment of error lacks merit. Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, A. J., and SEAN C. GALLAGHER, J., CONCUR