DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant/Cross-Appellee, Stanley Smith ("Appellant"), appeals from the decision of the Summit County Court of Common Pleas. This Court affirms in part and reverses in part.
 I. {¶ 2} In November of 2005, Appellant and Whitney Abrams ("Abrams"), the victim, were engaged to be married. The relationship ended in March of 2006. On April 11, 2006, Appellant went to Abrams' apartment. After talking outside, Appellant forced his way into the apartment. He then pushed Abrams into her room and locked the door. After some questioning by Appellant, Abrams *Page 2 
informed him that she had been in contact with an ex-boyfriend. Appellant choked Abrams at least two times to the point where she could no longer breathe. Appellant took Abrams' wallet, keys and cell phone and pleaded with her to come to his dorm room at the University of Akron. In order to stop him from choking her, Abrams agreed to accompany him to his room. Appellant then used Abrams' keys to drive them in her car to his dorm. Once in his dorm room, Appellant choked Abrams several more times. According to Abrams, Appellant choked her approximately 10 to 15 times throughout the night and Appellant forced her to have sex with him. According to Appellant, Abrams voluntarily had sex with him. Appellant would not allow Abrams to leave his room until the next morning. When Abrams got back to her apartment she called her mother who in turn called the police. Abrams spoke with police at her apartment and then she was transported to the hospital via ambulance. Abrams' right cheek was bruised and she had broken blood vessels from her hairline across her eyes down her check to her nose. She also had broken blood vessels around her neck, a circular bruise on her chest, and her lips and mouth were swollen. A rape protocol kit was used because Abrams stated that Appellant forced her to have sex with him. The kit was examined by a DNA technician who confirmed that the vaginal swabs showed a DNA profile consistent with Appellant and Abrams.
 {¶ 3} On April 21, 2006, Appellant was indicted on one count of kidnapping, in violation of 2905.01(B)(1), one count of felonious assault, in *Page 3 
violation of R.C. 2903.11(A)(1), one count of rape, in violation of R.C.2907.02(A)(2), one count of sexual battery, in violation of R.C.2907.03(A)(1), and one count of domestic violence, in violation of R.C.2919.25(A). A supplemental indictment was filed on May 30, 2006, charging Appellant with a second count of kidnapping, in violation of 2905.01(A)(2)-(4). Appellant pled not guilty to the charges, and on September 18, 2006, the matter proceeded to a jury trial. At the close of the State's case, the trial court granted Appellant's Crim.R. 29 motion as to the initial kidnapping charge and the sexual battery charge. At the close of all evidence, the jury found Appellant guilty of kidnapping, felonious assault and domestic violence. Appellant was acquitted of rape. Appellant was sentenced to a total of eight years incarceration; four years on the kidnapping charge, four years on the felonious assault charge, and 90 days incarceration for domestic violence to run concurrent with the felonious assault conviction. Appellant timely appealed from his convictions and sentence raising five assignments of error for our review. The State was granted leave to appeal, asserting one assignment of error. The two appeals were consolidated for our review. We have rearranged Appellant's assigned errors for ease of review.
 II. ASSIGNMENT OF ERROR I *Page 4 "THE TRIAL COURT ERRED IN PERMITTING STATE WITNESSES TO OFFER PREJUDICIAL `OTHER ACTS' TESTIMONY IN VIOLATION OF EVIDENCE RULES 403, 404, AND R.C. § 2945.59, WHICH DEPRIVED HIM OF HIS RIGHTS TO A FAIR TRIAL AND SUBSTANTIVE DUE PROCESS GUARANTEED BY ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENT[S] TO THE UNITED STATES CONSTITUTION."
 {¶ 4} In his first assignment of error, Appellant contends that the trial court erred in permitting the State's witnesses to offer prejudicial other act testimony, which deprived him of his right to a fair trial and denied him substantive due process.
 {¶ 5} The Rules of Appellate Procedure clearly state that we"may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based * * * as required under App.R. 16(A)." (Emphasis added.) App.R. 12(A)(2). Appellant assigns error to "witnesses'" testimony; however, it appears that Appellant is specifically arguing that the trial court erred when it admitted Abrams' statements regarding other alleged incidents of choking. Appellant has neglected to cite this Court to the specific statements in the record to support his argument as required by App.R. 16(A)(7) and Loc.R. 7(B)(6). However, we gather from Appellant's third assignment of error that he only contests the admission of Abrams' statements regarding these other acts, and as such will overlook the defect in *Page 5 
Appellant's first assignment of error.[1] Therefore, we will address the error on its merits, only as it pertains to Abrams' statements, cited to in his third assignment of error. We decline to address any error that the trial court may have made with regard to any other act testimony solicited through other witnesses.
 {¶ 6} We note that Appellant did not object at his trial to the evidence of which he now complains. It has "long been recognized, in civil as well as criminal cases, that failure to timely advise a trial court of possible error, by objection or otherwise, results in a waiver of the issue for purposes of appeal." Goldfuss v. Davidson (1997),79 Ohio St.3d 116, 121. However, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court[.]" Id., quoting Crim.R. 52(B). We must note the distinction between the waiver of an objection and the forfeiture of an objection. Although the terms are frequently used interchangeably, a waiver occurs where a party affirmatively relinquishes a right or an objection at trial; a forfeiture occurs where a party fails to assert a right or make an objection before the trial court in a timely fashion.State v. Payne, 114 Ohio St.3d 502, 2007-Ohio-4642, at ¶ 23; State v.Hairston, 9th Dist. No. 05CA008768, 2006-Ohio-4925, at ¶ 9. Where a party has *Page 6 
forfeited an objection by failing to raise it, the objection may still be assigned as error on appeal if a showing of plain error is made.Hairston at ¶ 9; Crim.R. 52(B).
 {¶ 7} Appellant asserts that the admission of Abrams' statements violated Evid.R. 404(B) and as a result, his "constitutional right to a fair trial was prejudiced." We find that Abrams' statements were properly admitted under Evid.R. 404(B). For ease of analysis we will address Evid.R. 404(B) here, but note that our discussion is also applicable to a portion of Appellant's third assignment of error.
 {¶ 8} On direct examination, Abrams testified that on some nights she was unable to make dinner for Appellant and that he would become angry if she failed to tape a television show for him. She stated that "at times [Appellant] would choke me for things like that." She also testified that "I couldn't breathe that time. He had never choked me so long ever. And he never choked me so hard." According to Abrams, this is why she relented and had sex with Appellant. On cross-examination, Appellant's counsel inquired as to why Abrams went with Appellant to his dorm room and why she did not try to escape. Abrams explained that because he had choked her before, she knew "he wouldn't stop until he got what he wanted." She also stated that she "didn't want to call the police on him because I thought that it was going to be like every other time." She testified that Appellant told her not to ever "call the cops on him because he'll come back and do what he wants to you." On redirect examination, Abrams again stated that she *Page 7 
did not ever call the police before because the choking had never resulted in as much damage as it did on April 11, 2006. She also explained that she was afraid Appellant would hurt her if she called the police. Finally, Abrams stated that she had screamed and yelled during past incidents of choking, but did not this time because no one ever came to help her. According to Abrams, if she would scream for help, Appellant would just choke her harder. We find that Appellant cannot show prejudice in this instance, as the statements were properly admitted under Evid.R. 404(B).
 {¶ 9} Evid. R. 404(B) provides that evidence of prior criminal acts completely independent of the crime for which a defendant is being tried may be admissible for purposes other than proving the conformity of an accused with a certain character trait during the incident in question. Specifically, Evid.R. 404(B) provides the following:
 "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." (Emphasis added.)
 {¶ 10} This Court has previously held that "prior bad acts by a defendant against the same victim are admissible in domestic violence cases to prove the defendant's intent[.]" (Alterations sic.) State v.Blonski (1997), 125 Ohio App.3d 103, 113. When using a defendant's prior acts to show his intent, "the offense for which the defendant is being tried and the other act must have occurred reasonably *Page 8 
near to each other and a similar scheme, plan or system must have been utilized to commit the offense at issue and the other offenses." Id., citing State v. Elliott (1993), 91 Ohio App.3d 763, 771. Abrams' testimony clearly shows Appellant acted in accordance with a similar scheme, plan or system when he choked her on the night in question. "These prior incidents are certainly probative of [Appellant's] intent to cause harm to or threaten to cause harm to [Abrams] during the [April 11, 2006] incident[.]" Id. The element of intent is relevant to the domestic violence charge. Id. Therefore, we find that Abrams' statements were properly admitted under Evid.R. 404. Accordingly, Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR III "APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE SIXTH
AND FOURTEENTH AMENDMENT[S] TO THE UNITED STATES CONSTITUTION DUE TO HIS ATTORNEY'S FAILURE TO (i) OBJECT TO UNFAIRLY PREJUDICIAL `OTHER ACTS' EVIDENCE, (ii) REQUEST JURY INSTRUCTIONS ON LESSER-INCLUDED OFFENSES WHILE SIMULTANEOUSLY MAKING ARGUMENTS THAT WERE INCONSISTENT WITH SMITH'S CLAIMS OF ACTUAL INNOCENCE, AND (iii) ASK THAT THE COURT GIVE CURATIVE INSTRUCTIONS."
 {¶ 11} In his third assignment of error, Appellant contends that he was denied his right to effective assistance of counsel. We do not agree.
 {¶ 12} In evaluating an ineffective assistance of counsel claim, this Court employs a two step process as described in Strickland v.Washington (1984), *Page 9 466 U.S. 668, 687. First, the Court must determine whether there was a "substantial violation of any of defense counsel's essential duties to his client." State v. Bradley (1989), 42 Ohio St.3d 136, 141; State v.Lytle (1976), 48 Ohio St.2d 391, 396, vacated in part on other grounds. Second, the Court must determine if prejudice resulted to the defendant from counsel's ineffectiveness. Bradley, 42 Ohio St.3d at 141-142, citing Lytle, 48 Ohio St.2d at 396-397. "An appellate court may analyze the prejudice prong of the Strickland test alone if such analysis will dispose of a claim of ineffective assistance of counsel on the ground that the defendant did not suffer sufficient prejudice." State v.Kordeleski, 9th Dist. No. 02CA008046, 2003-Ohio-641, at ¶ 37, citingState v. Loza (1994), 71 Ohio St.3d 61, 83, overruled on other grounds. Prejudice exists where there is a reasonable probability that the trial result would have been different but for the alleged deficiencies of counsel. Bradley, 42 Ohio St.3d at paragraph three of the syllabus. Appellant bears the burden of proof, and must show that "`counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" State v. Colon, 9th Dist. No. 20949, 2002-Ohio-3985, at ¶ 48, quoting Strickland, 446 U.S. at 687.
Failure to object to "Other Acts" evidence
 {¶ 13} Appellant first contends that his counsel was ineffective by failing to object to Abrams' testimony about prior choking incidents. We do not agree. *Page 10 
 {¶ 14} As we stated in Appellant's first assignment of error, Abrams' statements were properly admitted under Evid.R. 404(B). Where there is no error, Appellant cannot show that an objection would have changed the outcome of his trial. Accordingly, based on our analysis above, Appellant cannot satisfy the second prong of the Strickland test. Therefore, we overrule this portion of Appellant's argument.
Failure to ask that the court give curative instructions
 {¶ 15} Appellant next contends that his counsel was ineffective in failing to ask the trial court to strike the testimony of prior acts and request that the trial court issue a curative instruction to the jury admonishing them to disregard the evidence. As we discussed above, Abrams' testimony regarding other choking incidents was properly admitted under Evid.R. 404(B). Accordingly, because a request for a curative instruction, if made, would have been properly denied, Appellant cannot show that the outcome of his trial would have been different. Therefore, Appellant cannot satisfy the second prong of theStrickland test.
Failure to request jury instructions on lesser included offenses
 {¶ 16} Finally, Appellant contends his counsel was ineffective by failing to ask the trial court to issue instructions that would have enabled the jury to consider lesser-included offenses such as assault instead of felonious assault or abduction or unlawful restraint instead of kidnapping. We do not agree. *Page 11 
 {¶ 17} The law is clear that debatable trial tactics do not give rise to a claim of ineffective assistance of counsel. State v. Clayton
(1980), 62 Ohio St.2d 45, 49. Even if we question trial counsel's strategic decisions, we must defer to his judgment. Id. The Ohio Supreme Court has stated that
 "`[w]e deem it misleading to decide an issue of competency by using, as a measuring rod, only those criteria defined as the best of available practices in the defense field.' * * * Counsel chose a strategy that proved ineffective, but the fact that there was another and better strategy available does not amount to a breach of an essential duty to his client." Id. quoting Lytle, 48 Ohio St.2d at 396.
 {¶ 18} As Appellant aptly points out in his brief, the decision not to request jury instructions regarding lesser included offenses may be part of a "sound trial strategy aimed at acquiring a complete acquittal."State v. Davis, 9th Dist. No. 21794, 2004-Ohio-3246, at ¶ 18. Appellant argues that this is not the case here as his trial counsel made several statements during his closing arguments that suggested Appellant was "guilty of some criminal misconduct." However, Appellant has not made this portion of the record available to us for review. Appellant states in his brief that this portion of the record has not yet been ordered, but that he will move to supplement the record when the transcript is complete. The docket indicates that Appellant has not made such a motion. Without the appropriate transcript, Appellant cannot rebut the presumption that his counsel's action was a valid trial tactic. See App.R. 9(B) and 10(A). In the absence of the necessary transcript, we presume regularity in the proceedings. State v. Rogers, 9th Dist. No. 22354, 2005-Ohio-3117, at ¶ 23. Accordingly, we will not second *Page 12 
guess Appellant's counsel's decision regarding strategy. State v.Taylor, 9th Dist. No. 01CA007945, 2002-Ohio-6992, at ¶ 76. Appellant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR II "APPELLANT HAS BEEN DEPRIVED OF HIS RIGHT TO A FAIR TRIAL BY A JURY OF HIS PEERS DUE TO THE STATE'S EXCLUSION OF AN AFRICAN AMERICAN PANEL MEMBER AND THE TRIAL COURT'S ERRONEOUS DECISION TO OVERRULE HIS BATSON CHALLENGE."
 {¶ 19} In his second assignment of error, Appellant contends that he has been deprived of his right to a fair trial by a jury of his peers due to the State's exclusion of an African American panel member and the trial court's erroneous decision to overrule his challenge based onBatson v. Kentucky (1986), 476 U.S. 79. Appellant specifically argues that the jury selection in this case was racially biased.
 {¶ 20} To properly review Appellant's Bats on challenge we must review the facts and circumstances surrounding the State's exercise of the peremptory challenge. State v. Hill (1995), 73 Ohio St.3d 433, 444-445. Appellant has failed to provide this Court with a transcript containing the voir dire process. Nonetheless, he makes a specific argument that the State has taken an "inconsistent position when it comes to striking black jurors versus white jurors[.]" However, without the transcript, we are unable to reach the merits of this contention. It is Appellant's responsibility to supply the record demonstrating *Page 13 
the error presented on appeal. App.R. 9(B) and 10(A). Accordingly, absent the transcript including the jury selection process, Appellant cannot demonstrate that the trial court clearly erred in overruling hisBatson challenge. See State v. Tillman (1997), 119 Ohio App.3d 449, 454. Appellant states in his brief that he filed a motion seeking an order for the remaining portions of the transcript and that he will supplement the appellate record when these transcripts become available. Such a filing is not reflected in our records. Regardless, Appellant never made a motion to supplement the record and we are without the transcripts to review this assignment of error. Therefore, this Court "`has no choice but to presume the validity of the lower court's proceedings[.]'"Rogers, supra at ¶ 23, quoting Knapp, 61 Ohio St.2d at 199. Appellant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR IV "APPELLANT HAS BEEN DEPRIVED OF HIS LIBERTY WITHOUT DUE PROCESS OF LAW BY HIS CONVICTIONS FOR FELONIOUS ASSAULT AND DOMESTIC VIOLENCE, WHICH WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE TO PROVE HIS GUILT BEYOND A REASONABLE DOUBT AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 21} In his fourth assignment of error, Appellant claims that his convictions for felonious assault and domestic violence were against the manifest weight of the evidence and were based on insufficient evidence. An evaluation of the weight of the evidence is dispositive of both issues in this case. *Page 14 
 {¶ 22} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *4, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (overruled on other grounds). Further,
 "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *5.
 {¶ 23} Therefore, we will address Appellant's claim that his convictions were against the manifest weight of the evidence first, as it is dispositive of Appellant's claims of insufficiency.
 {¶ 24} When a defendant asserts that his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
We decline to address Appellant's argument regarding his conviction for domestic violence. We have recently explained that
 "[t]he Ohio Supreme Court has held that `where a defendant, convicted of a criminal offense, has * * * completed the sentence for that offense, an appeal is moot when no evidence is offered from *Page 15 
which an inference can be drawn that the defendant will suffer some collateral disability or loss of civil rights from such judgment or conviction.' State v. Berndt (1987), 29 Ohio St.3d 3, 4, quoting State v. Wilson (1975), 41 Ohio St.2d 236, syllabus. See also State v. McCombs, 9th Dist. No. 22837, 2006-Ohio-3289, at ¶ 16. In State v. Payne, 9th Dist. No. 21178, 2003-Ohio-1140, this Court found that the appellant would not suffer any collateral disability or loss of civil rights where the six month misdemeanor assault sentence ran concurrently with a longer felony sentence and the misdemeanor sentence had been fully served. Id. at ¶ 12." State v. Parker, 9th Dist. No. 23303, 2007-Ohio-960, at ¶ 12.
 {¶ 25} In the instant case, Appellant was sentenced to 90 days incarceration, to run concurrent with the longer felony sentences, and he has served the 90 day sentence in its entirety. He does not make an argument regarding any collateral disability or loss of civil rights. Accordingly, we decline to address this portion of Appellant's assignment of error.
 {¶ 26} Appellant was convicted of felonious assault, in violation of R.C. 2903.11(A)(1). This section states that "[n]o person shall knowingly * * * [c]ause serious physical harm to another[.]" The term "serious physical harm" is defined at the time the crime occurred by R.C. 2901.01(A)(5)(b) and (c) to include "any physical harm that carries a substantial risk of death" or "any physical harm that involves * * * some temporary, substantial incapacity."
 {¶ 27} Abrams testified that Appellant choked her 10 to 15 times. According to Abrams, Appellant told her that if she would not be in a relationship with him, then he would kill her. She testified that Appellant made several threats on her life and eventually *Page 16 
 "he lunged toward me and he took both of his hands around my neck and began shaking me back and forth and kind of turned me sideways and threw me on the bed and kept — just put both of his hands pushing down on my throat so I could not breathe at all. I remember my head had been whipping back and forth and my neck had already been extremely sore at that point. And he — he held on for a very long time. I could not breathe at all. And at one point everything went black, and I saw like — it looked like a lightning bolt and I thought that I was dying."
We do not agree with Appellant's argument that this testimony was vague. Abrams clearly testified that due to Appellant's violent assault, she almost lost consciousness. Dr. Goldman, who treated Abrams when she arrived at the emergency room on April 12, 2006, testified that Abrams had a petechial rash on the upper portion of her face and eyes. He explained that a petechial rash consists of small red dots that occur on the skin when capillaries burst. He testified that this is the result of extreme pressure, consistent with Abrams' allegations that Appellant choked her. It is hard to fathom how choking a victim to the brink of unconsciousness does not, as Appellant would like us to find, amount to a "substantial" risk of death. To this end, Dr. Goldman stated that being strangled or choked was a life-threatening act. After a review of the record, we conclude that the jury's finding that Appellant's conduct with Abrams caused a substantial risk of death or, minimally, a substantial risk of temporary incapacity, is supported by the evidence.State v. Carver, 2d Dist. No. 21328, 2006-Ohio-5798, at ¶ 15. As we have disposed of Appellant's challenge to the weight of the evidence, we *Page 17 
similarly dispose of his challenge to its sufficiency on this claim.Roberts, supra, at *5. Accordingly, Appellant's assignment of error is overruled.
 ASSIGNMENT OF ERROR V "THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO CONSECUTIVE FOUR-YEAR PRISON TERMS BECAUSE THE SENTENCES WERE DISPROPORTIONATE WITH THE COURT'S SENTENCES IN SIMILAR CASES AND UNJUSTIFIED GIVEN THE SLIGHT HARM TO THE VICTIM CAUSED BY THE ALLEGED ASSAULT AND KIDNAPPING."
 {¶ 28} In Appellant's fifth assignment of error, he contends that the trial court erred in sentencing him to consecutive four year prison terms because the sentences were disproportionate with the court's sentences in similar cases and unjustified given the slight harm to the victim. We disagree.
 {¶ 29} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Court found that Ohio's sentencing structure was unconstitutional to the extent that it required judicial fact-finding. Id. at paragraphs one through seven of the syllabus. In constructing a remedy, the Court excised the portions of the statute it found to offend theSixth Amendment and thereby granted full discretion to trial court judges to sentence defendants within the bounds prescribed by statute. See Id.;State v. Dudukovich, 9th Dist. No. 05CA008729, 2006-Ohio-1309, at ¶ 19.
 {¶ 30} Additionally, Foster altered this Court's standard of review which was previously a clear and convincing error standard. State v.Windham, 9th Dist. No. 05CA0033, 2006-Ohio-1544, at ¶ 11. Accordingly, this Court reviews Appellant's sentence utilizing an abuse of discretion standard. Id. at ¶ 12. An *Page 18 
abuse of discretion is more than an error in judgment or law; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. Furthermore, when applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621.
 {¶ 31} The Foster Court noted that "there is no mandate for judicial fact-finding in the general guidance statutes. The court is merely to `consider' the statutory factors." Foster, supra, at ¶ 42. Moreover, post Foster, it is axiomatic that "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at paragraph seven of the syllabus. Therefore, post-Foster, trial courts are still required to consider the general guidance factors in their sentencing decisions. A review of the record indicates that the trial court's decision to impose more than the minimum sentence took into account those statutory factors.
 {¶ 32} Appellant was convicted of a first degree felony and a second degree felony. Accordingly, the trial court was permitted to utilize its discretion to sentence him within the range of three to ten years incarceration for the first degree felony conviction, and within the range of two to eight years incarceration for the second degree felony. R.C. 2929.14(A)(1) (2). Appellant was sentenced *Page 19 
to four years incarceration on each conviction, to be served consecutively. Accordingly, Appellant's conviction fell within the statutory ranges set forth in R.C. 2929.14.
 {¶ 33} Upon review, this Court cannot say that the trial court abused its discretion in sentencing Appellant to a total of eight years incarceration. The record reflects that Appellant has had several prior convictions, including a prior assault conviction. R.C. 2929.12(D)(2). The trial court's sentence reflects a consideration of the purposes of felony sentencing under R.C. 2929.11. In its journal entry, the trial court stated that it "has considered the record, oral statements, as well as the principles and purposes of sentencing under O.R.C. 2929.11
and the seriousness and recidivism factors under O.R.C. 2929.12."
 {¶ 34} Accordingly, based upon a consideration of the factors in R.C.2929.12 and the purpose of felony sentencing as contained in R.C.2929.11, we cannot say that the trial court abused its discretion in sentencing Appellant to eight years incarceration.
 {¶ 35} We need not address Appellant's argument that the trial court erred in imposing a term of incarceration that is not proportionate to similarly situated offenders as Appellant has forfeited this argument for appeal. In the instant case, Appellant failed to raise this argument at the original sentencing hearing held on October 3, 2006. Due to Appellant's failure to raise this argument below, he has deprived the trial court of the opportunity to correct the alleged errors in the first *Page 20 
instance and has thereby forfeited this argument on appeal. SeeState v. Quine, 9th Dist. No. 20968, 2002-Ohio-6987, at ¶ 7 (finding that the appellant's failure to object to his sentence on the ground that his sentence was inconsistent with sentences imposed for similar crimes committed by similar offenders generally constitutes waiver of this argument absent assertion of plain error). Accordingly, we decline to address this issue.
 {¶ 36} Appellant's fifth assignment of error is overruled.
 CROSS-APPELLANT'S ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN NOT CONDUCTING A SEXUAL OFFENDER CLASSIFICATION HEARING."
 {¶ 37} The State argues in its cross-appeal that the trial court erred and abused its discretion in not conducting a sexual offender classification hearing. We agree.
 {¶ 38} During the sentencing hearing, the trial court denied the State's request for a sex offender classification hearing, explaining that
 "the reason I'm denying that is because the jury was charged as per your indictment with kidnapping to commit — to terrorize or to commit serious physical harm or for sexual activity. There was no sexual motivation specification which the law allows you to file, and we don't know which-since he was found not guilty of the rape, I cannot have a sexual offender hearing[.] * * * He was not convicted of a sex offense at this trial. He was convicted of serious physical harm and kidnapping. I assume to commit serious physical harm. So that motion is denied." *Page 21 
We find this reasoning to be in error, and reverse with instructions to hold a hearing.
R.C. 2950.09(B)(1)(a) states in pertinent part that:
 "[t]he judge who is to impose sentence on a person who is convicted of * * * a sexually oriented offense that is not a registration-exempt sexually oriented offense shall conduct a hearing to determine whether the offender is a sexual predator if any of the following circumstances apply:
 * * *
 "(ii) Regardless of when the sexually oriented offense was committed, the offender is to be sentenced on or after January 1, 1997, for a sexually oriented offense that is not a registration-exempt sexually oriented offense, and either of the following applies: the sexually oriented offense is a violent sex offense and a sexually violent predator specification was not included in the indictment, count in the indictment, or information charging the violent sex offense; or the sexually oriented offense is a designated homicide, assault, or kidnapping offense and either a sexual motivation specification or a sexually violent predator specification, or both such specifications, were not included in the indictment, count in the indictment, or information charging the designated homicide, assault, or kidnapping offense." (Emphasis added.)
 {¶ 39} It is clear from this section that, contrary to what the trial court determined, a sexual motivation specification is not a necessary prerequisite for it to hold a sex offender classification hearing. Without a sexual motivation specification, the issue becomes whether Appellant's conviction for kidnapping under R.C. 2905.01(A) constitutes a sexually oriented offense. R.C. 2950.01(D)(1)(c) defines a sexually oriented offense as a violation of "2905.01 of the Revised Code, or of division (A) of section 2903.04 of the Revised Code, that *Page 22 
is committed with a sexual motivation[.]" According to R.C. 2971.01(J), "`[s]exual motivation' means a purpose to gratify the sexual needs or desires of the offender."
 {¶ 40} As indicated in the trial court's sentencing entry, Appellant was convicted and sentenced for a violation of R.C.2905.01(A)(2)/(A)(3)/(A)(4). R.C. 2905.01(A)(4) states that
 "[n]o person, by force, threat, or deception shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: * * * (4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will[.]"
 {¶ 41} We note that the trial court instructed the jury as to the three subsections under which it could find Appellant guilty of kidnapping. The trial court stated that because the jury acquitted Appellant of rape, it must have found him guilty of kidnapping due to "serious physical harm on the victim[.]" R.C. 2905.01(A)(3). The trial court's reasoning is flawed as R.C. 2905.01(A) "punishes certain removal or restraint done with a certain purpose and the eventual success or failure of the goal is irrelevant." State v. Matthieu, 3d Dist. Nos. 10-02-04, 10-02-05, 2003-Ohio-3430, at ¶ 17, quoting State v. Moore (May 14, 1992), 8th Dist. No. 60334, at *3. Accordingly, a finding of not guilty on the rape charge "is not in any sense a finding that there was no intent or purpose to commit those crimes at the time of the abduction." Matthieu, at ¶ 17. citing State v. Dench (1959),111 Ohio App. 39, 42. A violation of R.C. 2905.01(A)(4) "qualifies as a *Page 23 
`sexually oriented offense' under R.C. 2950.01(D)(1)(c)."Matthieu, supra, at ¶ 25. Therefore, in compliance with the mandate of 2950.09(B)(1)(a)(ii), the trial court must hold a sexual offender classification hearing. See State v. Bellman (1999), 86 Ohio St.3d 208,210 (finding that the provision that the hearing shall be held before sentencing is not jurisdictional); see, also, State v. Webb, 9th Dist. No. 06CA008875, 2006-Ohio-5476, at ¶ 5 (stating that because the statutory time requirement in R.C. 2950.09(B)(1) is merely directory the trial court had jurisdiction to hold a hearing after sentencing). Accordingly, the State's assignment of error is sustained and the cause is remanded to the trial court for proceedings consistent with this opinion.
 III. {¶ 42} Appellant's assignments of error are overruled and his convictions are affirmed. The State's assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part and the cause is remanded for proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
 The Court finds that there were reasonable grounds for this appeal. *Page 24 
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
WHITMORE, P. J. CONCURS
[1] Appellant states in his third assignment of error that his counsel "repeatedly failed to object to the State questions and Abrams's testimony about prior choking incidents." Appellant then cites to the record to inform this Court the exact statements he contests.